315 So.2d 626 (1975)
STATE of Louisiana
v.
Darnell LEWIS.
No. 55874.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied July 25, 1975.
*627 Jacob J. Meyer, Louis J. Dutrey, James J. Coleman, Jr., Coleman, Dutrey, Thomson, Meyer & Jurisich, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Darnell Lewis was indicted by the grand jury of Orleans Parish for the crime of aggravated rape. La.R.S. 14:42. After a trial by jury he was found guilty of attempted aggravated rape on April 11, 1974. Thereafter he was sentenced to imprisonment for twenty years. On this appeal he relies upon three bills of exceptions and a motion to remand to support reversal of his conviction and sentence.
At approximately 2:30 on the morning of August 14, 1973, a 59 year old, hard-of-hearing female was forcibly raped by an intruder. Entrance was gained to her house by breaking a window pane in a back door, allowing the intruder to unlock the door.
The broken window pane, found in the utility shed of the victim's back yard, was taken to the crime lab and dusted for fingerprints. By testing it was decided that the fingerprints were those of the defendant. He was arrested at his residence approximately five hours after the rape occurred. At the time, defendant was seventeen years old. Thereafter he confessed to four aggravated and one attempted aggravated rape.

Bill 1
Prior to trial, the defense filed a prayer for oyer to compel the State to furnish, in effect, the entire evidence upon which the State relied for conviction.
While acknowledging that this Court's decisions have consistently denied pretrial discovery, appropriately citing State v. Vince, 305 So.2d 916 (La.1974), defense counsel urges the Court to reconsider these rulings.
*628 Aside from the fact that the legislature has deliberately refused to enact laws compelling pretrial discovery in criminal cases, this Court in a long line of decisions has repeatedly refused to extend pretrial discovery to any but limited subjects. In the cases before and since State v. Hunter, 250 La. 295, 195 So.2d 273 (1967) our position has been made clear.
The principles underlying a civil trial vary substantially from those which govern criminal trials. In a civil trial discovery is reciprocal; both the plaintiff and defendant are entitled to discover the facts upon which the other will rely at the trial. No presumption favors either litigant, and a preponderance of the evidence suffices to make out a case.
In a criminal trial, a strong presumption of innocence attends the accused throughout the trial, and the State must sustain the onerous burden of proving his guilt beyond a reasonable doubt. And reciprocity of pretrial discovery is not possible in criminal cases for the accused may not be compelled to produce evidence against himself. To do so infringes upon his constitutional right against self-incrimination. To compel unlimited pretrial discovery against the State, then, and not the accused adds one more impediment to the State's already difficult task of controlling crime. For when the accused is given access to the State's case to pour over and devise a defense by fair means or foul, the chances of his being brought to justice are greatly reduced.
Insofar as the request for the names of the State's witnesses is concerned, the defense contention presents a purely abstract proposition. At any time prior to trial, defense counsel could have obtained the names of the State's witnesses by reference to the case file in the office of the Clerk of the Criminal District Court where the case was tried, a file open to the public. To put it bluntly, the State had furnished the names of its witnesses to the entire worldthat is, to those who cared to look.

Bill 2
Prior to trial, defendant filed a motion to suppress the written confession obtained from him by Detective George Florance, a police officer of the city of New Orleans, as well as any and all other written inculpatory statements obtained by any other officer of officers whose names were unknown to him. The motion is based upon the contention that the confession was not freely and voluntarily given in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A hearing was held on the motion, it was denied, and this bill was reserved to the ruling.
Although the defendant asserted that the written confession he gave was extracted from him by force, this position is no longer urged. The issue has narrowed to the contention that once an individual, held in custody and charged with a crime, refuses to waive his privilege against self-incrimination, all further interrogation must cease; otherwise it must be presumed that any subsequent confession resulted from compulsion. This language from the Miranda case is relied upon:
"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been invoked."
The facts surrounding the taking of the confession show that at 6:50 on the morning of the crime, after the fingerprints test revealed that defendant broke the glass *629 pane in the door, detectives Heath and Florance arrested him at his residence after a struggle. They then orally advised him of his rights (Miranda warnings) and took him to headquarters. At 7:10 a.m. they presented him with a rights of arrestee and waiver of rights form. This he refused to sign, saying that he would talk about the crime but that he did not want to make any type of written statement. The detectives, therefore, did not question him further and proceeded to book him. It was then 7:25 a.m.
When they related these facts to their superior shortly thereafter, they were told to get the defendant out of his cell and question him further since he had already given them a short verbal statement and expressed a willingness to talk. Accordingly, at 7:55 a.m. the detectives took defendant out of his cell and brought him to an interrogation room. Again defendant said he wanted to talk but would not sign a second waiver of rights form tendered to him.
At this meeting, he told the officers that something was wrong with him and he needed help. He felt particularly bad about raping this woman, he said, because she was handicapped. At this point the officers explained to him that he could not talk to them until he had signed the waiver of rights form. He then signed the form at 8:05 a.m., and at 8:10 a.m. he made oral statements in which he confessed to the present crime as well as to four other aggravated rapes of elderly females and one attempted aggravated rape for which he had already been arrested. At some time prior to making this statement he had been advised that his fingerprints were found at the scene of the rape. He then rode around with the police pointing out the houses where he had committed the other rapes.
At 1:50 that afternoon he was returned to his cell to rest and sleep. No attempt was made to have him sign a written statement at that time for the officers were tired and needed rest having been on duty since midnight. However when they returned to duty that night on the midnight shift they roused defendant from his cell at 2:45 a.m. Although defendant was somewhat sleepy, he then agreed to give them a written statement. At this time he was again advised of his rights and signed the third waiver of rights form tendered to him. The statement at issuea question and answer type confessionwas then typed and signed by the defendant.
From these facts it is plain that the defendant never invoked the right to remain silent. He was willing to be interviewed, he only objected to signing the waiver of rights form. In a similar factual situation in Hodge v. United States, 392 F.2d 552 (5th Cir. 1968) it was held that the defendant had effectively waived his rights although he consistently refused to sign the waiver form. And we agree. There is not requirement in Miranda that the waiver of rights be in writing. The written waiver has been employed by law enforcement officials to establish proof of the waiver; it may nevertheless be established by other evidence. Thus the fact that defendant refused to sign the waiver of rights form after having been fully informed of his rights as required by the Miranda rule, did not render him incapable of making voluntary verbal inculpatory statements or confessions thereafter.
What is important is that confessions be free and voluntary, and that the defendant be fully informed of his rights beforehand. Nothing in the facts recited above shows the confession to be other than remorseful, free and voluntary, not only to the instant crime, but to several others. State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972).
This bill of exception has no merit.

*630 Bill 6

While Officer Heath was testifying for the State, the following exchange took place:
"Q. After concluding your taking of the oral statement from the defendant, Officer, what did you do with the defendant?
A. Well when he first started making the statement, he told us he wanted to tell us about some other things he had done."
When the answer was completed, defendant moved for a mistrial and the motion was denied. It is the defense contention that the words "some other things he had done" were a prohibited reference to other crimes prejudicing the accused and entitling him to a mistrial in accordance with Article 771 of the Code of Criminal Procedure.[1]
The remark does not necessarily lead to the assumption that the other crimes were referred to. It might just as well have referred to other things done in committing this particular crime. The remark was not prejudicial. The answer was, moreover, unresponsive to the question. In the context of the interrogation, the State's attorney was trying to elicit testimony concerning the return of defendant to his cell for a rest before the written confession was given. The officer's inadvertent reference to "other things" if other crimes were meant, is not chargeable to the State. State v. Gabriel, 308 So.2d 746 (La.1975); State v. Callihan, 257 La. 298, 242 So.2d 521 (1970).
In any event, the foregoing contentions cannot obscure the fact that this situation does not entitle the defendant to a mistrial as a matter of right under the terms of Article 770 of the Code of Criminal Procedure and it was therefore not error for the trial judge to refuse to grant a mistrial. Although this fact situation is within the contemplation of Article 771(2) of the Code, it does not follow that a mistrial should have been granted. In this context the defense is only entitled to request that the judge admonish the jury to disregard the objectionable remark by the witness. No such request was made and the motion for mistrial was properly denied. State v. Johnson, 306 So.2d 724 (La.1975).

Motion to Remand
As noted in the beginning of this opinion, this trial was commenced and concluded during the month of April, 1974. It is also evident from the record that only men served on the jury. When the case was being tried the law of this State did not permit women to be called for jury service unless they had manifested their willingness to serve by a writing filed with the Clerk of Court's office. Thereafter, while this case was on appeal the United States Supreme Court decided Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 on January 21, 1975, declaring the Louisiana statutory and constitutional authority for excluding women from jury *631 service unconstitutional. Shortly thereafter, in Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), the Court declared that, as a matter of federal constitutional law, the decision in Taylor v. Louisiana would not apply retroactively to any prosecution where the jury was empaneled prior to the date of the decree in the Taylor case. In State v. Rester, 309 So.2d 321 (La.1975) and State v. Devore, 309 So.2d 325 (La.1975) we decided, that as a matter of state law, the rule of the Taylor case would not be applied retroactively. This case, therefore, falls within that category of cases where trial was commenced prior to the decision in the Taylor case and defendant cannot complain that women were excluded from the jury which tried them.
Louisiana's Constitution of 1974 does now provide that women be considered for jury service without the former requirement that their willingness be manifested. La.Const. art. V, § 33 (1974); La.Code Crim.Proc. art. 402 repealed (1974). This constitutional provision is not retroactive, however, and cannot be relied upon by this defendant. La.Const. art. XIV, § 35 (1974).
This motion to remand is denied.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs. As to Bill No. 1, concurs in the result only for reasons assigned.
DIXON, J., concurs, agreeing with the opinion except for the discussion of Bill No. 1.
TATE, Justice (concurring).
Under current decisions of this Court, the denial of pre-trial discovery is not cause for reversal, at least under the circumstances here shown. Nevertheless, several broad statements by the organ of the majority opinion infer disapproval of pre-trial discovery in criminal cases and should not go unnoticed.
Without exception, informed studies and the recommendations of leading groups in law-reform are of the view that pre-trial criminal discovery will, as has discovery in civil cases, lead to more efficient and more just disposition of criminal prosecutions. In Louisiana, after a year or so of study, based on recommendations of leading prosecutors, practitioners, judges and academicians, our State Law Institute has recommended a package of legislation providing for expanded pre-trial discovery. Prestigious national groups have likewise, after intensive study, reached the conclusions I noted above. See, e.g.: American Bar Association Standards Relating to the Administration of Criminal Justice, Discovery and Procedure Before Trial (1970); National Advisory Commission on Criminal Justice Standards and Goals, Standards on the Courts, Standard 4.9 (1973).
As these authoritative studies indicate, court-supervised disclosure between adversaries, prior to trial, of evidence can often induce a reasoned plea-disposition without trial, can often shorten trials by simplifying issues, and can often avoid the determination of innocence or guilt being reached because of lawyer tactics and surprise rather than on the merits of the facts.
In civil cases, we do not for a minute countenance a party withholding evidence from pre-trial access by the other, since we do not believe civil cases should be decided by trickery. We have found that the possibilities for mistaken or even perjured testimony are greatly reduced by forcing the parties to disclose to each other before trial the evidence they intend to rely upon. All the more in criminal prosecutions, where the liberty of individuals and the power of the state are in confrontation, should the same principles apply.
Discovery need not be a one-way street. As the standards suggest, and as the pretrial *632 discovery we from time to time order by supervisory writs demonstrate, the state's duty to disclose may be conditioned upon the defendant's reciprocal duty to disclose in advance of trial special defenses (such as alibi), witnesses to prove them, the results of chemical or scientific tests, etc. The defendant's Fifth Amendment rights extend to his right not to testify and his right not to make the decision whether to testify until the close of his case; but, outside of his own testimony, the Fifth Amendment does not prevent reasonable pre-trial reciprocal discovery.
I do not believe any of the fine prosecutors of this state really want to deny a defendant a fair trial and a fair opportunity to prepare his defense. Few of them opposed the Louisiana State Law Institute's recommendations for pre-trial discovery in criminal proceedings. Many of our prosecutors afford discovery to an accused voluntarily, and a substantial number of judicial districts of this state now order it.
Further, whether we as individual judges agree with the concept of pre-trial discovery or not, the principles of the federal constitution as enforced by the federal courts (and as we are bound by oath to enforce them, if authoritatively so interpreted) must force us to re-examine any institutional bias we may have against the concept. We must do so, if only to safeguard state convictions from annulment on federal habeas review for denial of a fair trial.[1] We should do so, in the interests of maintaining the fairness of our adversary trial system and of promoting the more efficient administration of justice.
For these reasons, therefore, I concur in the result as to Bill No. 1 but not in the expressions by the organ of the Court indicating disapproval of pre-trial discovery.
NOTES
[1] La.Code Crim.Proc. art. 771 provides:

"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
[1] Among the many federal decisions which have set aside Louisiana convictions on such grounds on habeas review are: Barnard v. Henderson, 514 F.2d 744 (CA 5 1975) (denial of pre-trial inspection and testing of physical evidence, including ballistics testing), with regard to the conviction in State v. Barnard, 287 So.2d 770 (La.1973); Flanagan v. Henderson, 496 F.2d 1274 (CA 5, 1974) (denial of pre-trial study of a fingerprint, and of scientific analysis of sperm from victim, and of pre-trial statements of prosecution witnesses which might contain exculpatory information), in proceedings to annul conviction in State v. Flanagan, 254 La. 100, 222 So.2d 872 (1969); Davis v. Heyd, 479 F.2d 446 (CA 5, 1973) (failure to afford pre-trial discovery of statements of prosecution witnesses), annulling conviction in State v. Davis, 259 La. 35, 249 So.2d 193 (1971); Clark v. Reid, 441 F.2d 801 (CA 5, 1971) (failure to afford pre-trial opportunity to defendant to conduct scientific analyses of alleged illegal substance possessed by him), with regard to conviction in State v. Clack, 254 La. 61, 222 So.2d 857 (1969).

In each of these instances and of the many other convictions involved in post-conviction attacks, the advantage of pre-trial discovery would be not only to avoid an unfair trial, but also to avoid an endless series of post-conviction proceedings. The ground of these attacks is that the accused was convicted by, in effect, denying him the opportunity to prepare his defense required by the United States Constitution.