343 So.2d 722 (1977)
STATE of Louisiana
v.
Johnny ROSS.
No. 58681.
Supreme Court of Louisiana.
March 7, 1977.
*724 John L. Carroll, Morris S. Dees, Montgomery, Ala., George M. Strickler, Jr., New Orleans, Stephen J. Katz, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Lawrence J. Centola, Jr., Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Johnny Ross was indicted by the grand jury for the Parish of Orleans for having committed aggravated rape in violation of La.R.S. 14:42. After trial by jury, he was found guilty as charged and sentenced to death. On appeal defendant relies on twelve assignments of error for reversal of his conviction and sentence.[1]

ASSIGNMENTS OF ERROR NOS. 4 AND 8
Defendant contends the trial judge erred in denying his motion to suppress his written confession and in permitting its introduction into evidence at trial. He argues that his confession was not freely and voluntarily made.
The record of the suppression hearing reflects that defendant, Johnny Ross, is a sixteen-year-old juvenile who can read and write and has completed the eighth grade. At approximately 4:15 a. m. on July 25, 1974, he was arrested at his home in the presence of relatives by several police officers including Officer Steven London who testified that defendant was verbally advised of his rights when arrested. Neither defendant nor any member of his family ever requested that a family member be allowed to accompany him to police headquarters. Immediately after arrest, defendant was placed in the custody of Officers London and Bruno who again advised him of his rights enroute to the stationhouse. Upon arrival there at 5:15 a. m., defendant was carefully read his rights from a Rights of Arrestee Form which he thereafter signed, acknowledging his understanding thereof, in the presence of Officers London and Bruno. At this point, defendant indicated that he wished to cooperate and speak with the officers about the matter. He was then taken to central lockup (5:55 a. m.) where he was booked with the charge and at 6:25 a. m. was returned to the homicide office. The officers then proceeded to obtain defendant's confession by means of questions and answers which were typed by Officer Bruno as they progressed. At the conclusion, Officer Bruno reviewed the four-page statement with defendant in order to assure that he understood it and that it accurately reflected his statements. Defendant signed the confession *725 in the presence of Officers London and Bruno. The taking of the statement was commenced at 6:40 a. m. and was concluded at 8:20 a. m. Both of these officers testified that defendant had been in their custody continuously from the time of his arrest until he signed the inculpatory statement. They clearly maintained that defendant had never been threatened, coerced, physically abused or promised anything in order to induce his confession.
Defendant's testimony at the suppression hearing was contrary to that of the police officers. He admitted that he had signed a waiver of rights form; however, he contended that he was not advised of his rights until after his confession had been secured. There is no evidence that defendant ever requested that an attorney or family member be present during the questioning. Defendant claimed that when he signed the four-page confession, only the phrase "No Statement" had been typed on each page. He alleged that he was beaten by the interrogating officers in order to secure his signature. Defendant testified that he had requested his mother to send a doctor to the prison to treat him and that he had shown at least one of the bruises received in the incident to a physician at central lockup. However, neither of these persons was called to testify in support of defendant's story. Defendant also claimed that Mr. Bogart, his attorney's investigator, had seen the bruises he had received in the alleged beating. Yet when Mr. Bogart was unable to testify at the hearing due to illness, defense counsel chose not to request a continuance. We further note that defendant did not complain of any abusive conduct when he was interrogated by FBI officers later that day. In fact, he admitted having given them a similar inculpatory statement without having been threatened or physically abused. In sum, defendant's testimony concerning the events surrounding his confession was wholly uncorroborated. His allegations were specifically contradicted by Officers London and Bruno who were in custody of defendant at all times relevant to this matter.
Before a written confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, inducements or promises. La.R.S. 15:451; La.Code Crim.P. art. 703(C). It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A confession need not be the spontaneous act of the accused and may be obtained by means of questions and answers. La.R.S. 15:453; State v. Simmons, 340 So.2d 1357 (La.1976). While close scrutiny is required in determining whether the state has met its heavy burden of demonstrating that the confession of a juvenile was free and voluntary, we have held that the age of a defendant does not of itself render a confession involuntary. State v. Sylvester, 298 So.2d 807 (La.1974). The voluntariness of the confession is a question of fact. State v. Demourelle, 332 So.2d 752 (La.1976); State v. White, 321 So.2d 491 (La.1975).
It is well settled that admissibility of a confession is a question for the trial judge; its weight is for the jury. Conclusions of the trial judge on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Hollingsworth, 337 So.2d 461 (La.1976); State v. Sims, 310 So.2d 587 (La.1975).
After reviewing the record, we are convinced, as was the trial judge, that the state satisfied its burden of affirmatively proving that the written confession was freely and voluntarily made after defendant had been fully advised of his Miranda rights. Defendant's uncorroborated assertion that he was beaten and did not understand his rights is insufficient to render his confession inadmissible in view of the affirmative evidence to the contrary. Accordingly, the trial judge did not err in *726 denying defendant's motion to suppress and in admitting his confession in evidence.
Assignments of Error Nos. 4 and 8 are without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred when he excused for cause fifteen jurors challenged by the state based on their sentiments regarding the death penalty.
La.Code Crim.P. art. 798 provides in pertinent part:
It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt;
. . . . .
This article was amended to conform with the decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), wherein the United States Supreme Court held that the exclusion of prospective jurors in a capital case who merely expressed conscientious or religious scruples against capital punishment violates an accused's constitutional rights under the sixth and fourteenth amendments with respect to the jury's role as arbiter of the punishment to be imposed. On the other hand, the Court found no constitutional bar to excluding jurors who stated in advance of trial that they could not return a verdict of guilty under any circumstances, regardless of the proof at trial. Defendant contends, however, that, even if the jury is qualified in compliance with the standards outlined in witherspoon and La.Code Crim.P. art. 798, it is nevertheless constitutionally infirm and violative of his rights under the sixth and fourteenth amendments with respect to the question of guilt or innocence. He argues that such a jury is conviction prone and non-representative of the community. These contentions were rejected in Witherspoon. There, the Court held that no showing was made that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. Under these circumstances, the Court refused to upset the conviction even though the jury had not been selected in accordance with the standards enunciated therein. Only the death sentence imposed was reversed. A fortiori, we reject defendant's contention herein that, even if the jury was qualified in accordance with Witherspoon standards and La.Code Crim.P. art. 798, it was nevertheless constitutionally infirm and violative of his rights under the sixth and fourteenth amendments with respect to the question of guilt or innocence.
Defendant further argues, however, that in the instant case five jurors were excused who expressed only general opposition to the death penalty. After carefully examining the record of voir dire examination, we are satisfied that four of these jurors were properly excused in strict compliance with the standards set out in Witherspoon and La.Code Crim.P. art. 798(2). The responses made by these prospective jurors clearly indicated that regardless of the evidence they would not concur in a verdict of "guilty of aggravated rape" because of their refusal to apply the death penalty required by statute upon conviction. With respect to the remaining juror whose excusal is in dispute, the record discloses that he was unable to answer the questions propounded by the court concerning his ability to render a verdict carrying the mandatory death penalty. The juror indicated that in the past he had not believed in capital punishment but presently did not know what his position was. Hence, it was impossible for the trial judge to ascertain whether or not this prospective juror would be able to reach an impartial *727 decision based on the evidence when the time came to determine guilt or innocence. We are not convinced that it is improper to excuse a juror for cause where, as here, the juror is unwilling to assure the court that he can be neutral with respect to penalty.[2]
In any event, the mandatory death penalty provision of our aggravated rape statute was invalidated by the United States Supreme Court decision in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976). In accordance with this decision, the practice of this court is to vacate death sentences in aggravated rape cases and remand the cases to the trial court for resentencing of defendants to the most serious penalty for the next lesser included offense at the time of the commission of the crime. State v. Craig, 340 So.2d 191 (La.1976); State v. Lee, 340 So.2d 180 (La.1976).
We have uniformly held that a defendant insulated from the death penalty has no valid Witherspoon complaint. State v. Nicolaus, 340 So.2d 296 (La.1976); State v. Hunter, 340 So.2d 226 (La.1976); State v. Miles, 339 So.2d 735 (La.1976); State v. Rester, 309 So.2d 321 (La.1975).
Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 7
Defendant contends that the trial judge erred in admitting at trial the victim's testimony identifying him as one of her assailants. He argues that this testimony was tainted by pretrial identification procedures which rendered its use against him a denial of his right to due process of law.
The record reveals that on August 1, 1974, two weeks after her rape, the victim in this case viewed a lineup of six young men including defendant. Defendant was represented at this lineup by counsel who testified at the pretrial suppression hearing that the lineup procedure had been neither improper nor suggestive. The victim was unable to identify defendant from the lineup and explained to the officer in charge that she had not been able to see very well from where she was seated. Approximately fifteen minutes later, the victim was asked to view a photographic showup, whereupon she identified defendant as one of two men who had forceably raped her. Defendant contends that this procedure was impermissibly suggestive in that he was the only subject who appeared in both the lineup and subsequent photographic showup.
The test of whether an out-ofcourt identification was so impermissibly suggestive and conducive to mistaken identification that defendant was denied due process of law must be determined by the facts of each case. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). A claimed violation of confrontation depends on the totality of circumstances surrounding it. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Therefore, even if the out-of-court identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights. State v. Judson, 329 So.2d 742 (La.1976); State v. Peevy, 321 So.2d 324 (La.1975); State v. Payton, 294 So.2d 211 (La.1974); State v. Moseley, 284 So.2d 749 (La.1973).
In the instant case, the rape victim was driving home in her automobile when she was rear-ended by defendant's vehicle. When she got out of her car to inspect the damages, defendant and his companion forced her into her car and positioned themselves on either side of her. The two men drove the victim around the city, stopping first at a gas station for gas and then near *728 a warehouse where the victim was forced at gunpoint to undress and submit to repeated acts of sexual intercourse in the back seat of her car. After completing the forcible assaults on the victim, the two men continued to drive the victim around the city, stopping at a bar to purchase cigarettes and eventually taking the victim to the area near where she lived. The aforesaid events extended over a period of about two hours. During this period, the victim, a federal law enforcement officer, had ample opportunity to observe and identify defendant as one of her assailants. At trial, she made a positive identification of defendant.
In view of the totality of the circumstances, particularly the close proximity of defendant and the length of time spent in the victim's presence, we are satisfied that the in-court identification of defendant was based independently on the victim's observations before, during and after the offense. Therefore, whether or not the pretrial identification procedures were tainted, the in-court identification did not violate defendant's due process rights because the in-court identification had a source independent of the out-of-court identification. State v. Bland, 310 So.2d 622 (La.1975); State v. Peevy, supra. Accordingly, the trial judge did not err in admitting the victim's in-court identification testimony.
Assignment of Error No. 7 is without merit.

ASSIGNMENTS OF ERROR NOS. 11 AND 12
In these assignments of error, defendant contends that he was denied effective assistance of counsel in that his retained trial attorney failed to adequately prepare and present his defense. More particularly, defendant alleges that trial counsel relied entirely upon Mr. William Bogart, Sr., his investigator, for the factual preparation of the case. Mr. Bogart was prevented by illness from testifying both at hearings on defendant's pretrial motions and at trial on the merits. Defendant argues that, despite the fact that trial counsel knew of Mr. Bogart's illness and that he (Bogart) possessed information crucial to his defense, he did not seek a continuance of the hearing on the motion to suppress. Additionally, defendant contends that trial counsel did nothing to prepare for trial, but rather continued to rely on Mr. Bogart's absence as an excuse for his failure to present a meaningful defense.
Based on the record before us, we are unable to determine the merits of the accusations of ineffectiveness leveled at defendant's trial counsel. Such allegations as are made here are more properly raised by writ of habeas corpus at which time a full evidentiary hearing may be ordered on the matter. State v. Mouton, 327 So.2d 413 (La.1976). Accordingly, we decline to review the issue raised in Assignments of Error Nos. 11 and 12 at this time.
After defendant was sentenced in this matter, the United States Supreme Court in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976) held unconstitutional Louisiana's mandatory death sentence for aggravated rape. In accordance with this decision, this court has vacated death sentences in aggravated rape cases but, when no other reversible error has been found, we have remanded the cases to the trial court for resentencing of defendants to the most serious penalty for the next lesser included offense at the time of the commission of the crime. State v. Craig, 340 So.2d 191 (La.1976); State v. Lee, 340 So.2d 180 (La.1976). In the instant case, the crime was committed on July 17, 1974. The most serious penalty for the next lesser included offense at that time was simple rape carrying a maximum penalty of twenty years. Accordingly, even though we affirm the conviction, we vacate and set aside the imposition of the death penalty and remand the case to the trial court for resentencing.

DECREE
For the reasons assigned, defendant's conviction is affirmed, but the death sentence imposed on him is annulled and set aside, and the case is remanded to the district *729 court with instructions to the trial judge to resentence defendant.
TATE, J., concurs and assigns reasons.
CALOGERO, J., concurs for the reasons assigned by TATE, J.
TATE, Justice, concurring.

(1)
The voluntariness of the confession of the accused presents in this case a serious issue.
The accused, a sixteen year old minor, executed a waiver of rights from prior to his questioning in the early hours of the morning, just after he was roused from his bed, arrested, taken to the scene of the crime, and then to the detective bureau. After the initial questioning at the police station, interrogation was resumed at 6:25 a.m. and continued until 8:40 a.m., when he signed the confession here at issue. The accused did not have the benefit of the advice of any older member of his family, when (surrounded by police officers in his solitariness in the police station) he waived his right to the assistance of counsel and to counsel's presence at his questioning.
I would say that, in most such instances that have come before us, the investigating officers have taken the precaution to assure that a juvenile is allowed to confer with his parent or an older member of his family before he is permitted to waive the important constitutional right of counsel. This helps to assure the fairness of his waiver and of his interrogation, and the voluntariness of any statement thereby obtained.
I am not as yet prepared to say that such commendable procedure is required before a court may hold that there was an informed waiver by a juvenile of his constitutional rights to protection during interrogation while in custodial detention. However, persuasive reasons exist to hold that constitutionally a minor may not waive these important constitutional rights without the benefit of responsible and disinterested advice. See concurring opinion of Judge Fedoroff, State in Interest of Holifield, 319 So.2d 471, 474 (La.App. 4th Cir. 1975). The better practice for the state, it seems to me, would be to avoid the real possibility of constitutional invalidity of custodial interrogation of a minor by making certain, before he waives his right to the assistance and presence of counsel, that he does so on an informed basis and only after access to responsible advice from some older members of his family or from other non-police sources.
In the present case, I am unable now to hold that, judged by presently existing standards, the confession was involuntary and that the waiver of Miranda rights was not on an informed basis. The issue is close, nevertheless. I therefore concur in the majority's opinion with great reservation that there was indeed an informed waiver of constitutional rights, without which the confession is constitutionally deemed involuntary.

(2)
I must also once again note that it is contrary to law and tantamount to allowance of additional peremptory challenges to the state to exclude from a petit jury in a capital case those prospective jurors with mere scruples against capital punishment, but with no fixed opinion which will prevent them from accepting the instructions of the court as to the issue. See La.C.Cr.P. arts. 798(2) and 800 and my concurring opinion in State v. Miles, 339 So.2d 735, 740 (La.1976).
I therefore cannot agree with the majority's alternative rationale that the present accused cannot complain of such exclusion because, on appeal, the death penalty assessed by the trial jury is set aside.
However, I agree with the majority that no such jurors were thus erroneously excluded for cause under the voir dire examinations of them reflected by the present record.
NOTES
[1] Assignments of Error Nos. 1, 2, 3, 6, 9 and 10 have been neither briefed nor argued to this court. Hence, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[2] La.Code Crim.P. art. 799 allows the state twelve peremptory challenges for each defendant in a trial of an offense punishable by death. The minutes reflect that the state only used eleven of its peremptory challenges. Therefore, even if this juror was improperly excused, any contention that the effect of such ruling was the exercise by the state of more peremptory challenges than it was entitled to by law is without merit. La.Code Crim.P. art. 800.