353 So.2d 703 (1977)
STATE of Louisiana
v.
David Eugene LEWIS.
No. 59714.
Supreme Court of Louisiana.
November 14, 1977.
*705 James J. Gleason, III, Public Defender, Covington, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
David Eugene Lewis was indicted by the grand jury for first degree murder of Earl L. Alfred in violation of La.R.S. 14:30(1) and (2) (1973).[1] After trial by jury, he was found guilty as charged and was sentenced to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence for twenty years. On appeal, defendant relies on eighteen assignments of error for reversal of his conviction and sentence.[2]
The record reflects that about 8:00 a. m., August 13, 1975, defendant allegedly drove his black and white Buick automobile to a shopping center in Slidell and parked it behind a jewelry store. He then entered the store and found Betty Graves, a salesclerk, alone. Defendant spoke with Ms. Graves, who recognized defendant as one who had been in the store a few days earlier to inquire about a purchase. Defendant grabbed Ms. Graves and stabbed her with scissors. While defendant was taking some items of jewelry, Ms. Graves was able to trigger the burglar alarm. Defendant attempted to strangle Ms. Graves and then exited at the rear door of the store, where he encountered Police Officer Earl Alfred, who had been sent to investigate the alarm. Officer Alfred took defendant's gun and attempted to arrest him. A struggle ensued, during which defendant obtained Officer Alfred's gun and fatally shot the officer three times. Defendant then got into his parked car and drove away. Police investigators were able to make a composite likeness of the suspect and obtain a description of his car from the accounts of various witnesses.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in denying his request to hold in camera hearings on certain pretrial motions. Defendant argues that the hearings should have been held in camera to avoid extensive pretrial publicity.
Defendant offers no authority to conduct pretrial hearings in camera.[3] Moreover, defendant made no showing to the trial court that in camera hearings were necessary; nor does he make any allegations on appeal that prejudicial publicity actually resulted from the public hearings.
Assignment of Error No. 1 is without merit.

*706 ASSIGNMENTS OF ERROR NOS. 2 AND 4
Defendant contends the trial court erred in sustaining the state's objections to two questions defendant asked state witnesses at a suppression hearing. Both questions were asked during testimony concerning the voluntariness of statements made by defendant during police interrogation.
Assignment of Error No. 2 concerns defendant's inquiry of a police officer as to what times he had entered and exited the room in which defendant was being questioned. Defendant stated that the purpose of this inquiry was to show that the witness had not been present in the interrogation room at all times and may not have seen some relevant occurrences. The state objected to the question on the ground that it was irrelevant; the trial judge sustained the objection. However, later during the testimony of the same witness, defendant asked him how long he had been absent from the interrogation room. The state again objected; but the trial judge overruled the objection finding the inquiry relevant. The witness then answered the question.
Assignment of Error No. 4 concerns defendant's inquiry of assistant district attorney, Pat Berrigan, as to whether or not he felt he should have cleared the interrogation room before asking defendant if he had been mistreated by the police. The obvious purpose of the inquiry was to imply that defendant's answer may have been influenced by the mere presence of his interrogators. The state objected to the question on the grounds that it dealt with procedure and was irrelevant; the trial judge sustained the objection. However, later during Mr. Berrigan's testimony, defendant asked him if it was his custom to ask a defendant about mistreatment in the presence of those persons who had interrogated the defendant. The state again objected, but the trial judge overruled the objection and allowed the witness to answer the question.
Assuming, without deciding, that errors were committed by the trial judge in sustaining the state's objections to defendant's questions, the alleged errors were harmless in view of the fact that in both instances defendant secured answers to similar questions thereby achieving his purpose. La. Code Crim.P. art. 921; State v. Keys, 328 So.2d 154 (La.1976).
Assignments of Error Nos. 2 and 4 are without merit.

ASSIGNMENTS OF ERROR NOS. 5, 6 AND 17
These three assignments of error concern the voluntariness of three statements made by defendant during police interrogation and the admissibility of physical evidence which was recovered pursuant to information given in one of those statements. Defendant contends the trial court erred in ruling that the statements were freely and voluntarily made, in denying defendant's motion to suppress the physical evidence, and in admitting that physical evidence at trial.
Four police officers, an assistant district attorney, and two physicians were state witnesses at the suppression hearing. The testimony of these witnesses reflect the following circumstances surrounding the interrogation.
About 12:00 p. m., August 13, 1975, defendant entered the Slidell Police Department, accompanied by his mother and a friend. Officer Edwards testified that defendant resembled the composite picture of the suspect. Defendant informed Officers Edwards and Drennan that he had heard the police were looking for a car in connection with the murder of a police officer and that his own car fit the description. Defendant said that he wished to clear himself regarding the matter. Officer Drennan testified that he immediately informed defendant of his Miranda rights. The officers also told defendant that he was not under arrest, that he was only a suspect, and that he could leave if he wished to do so. Defendant then reiterated that he wished to clear himself of any suspicion and said that he was willing to answer any questions the police might ask.
*707 Defendant was then taken to Lt. Humphrey's office, a room about 10 × 12 feet. His mother stayed in the outer office during most of the interrogation. Defendant's friend had left at some undetermined point. Defendant was given coffee, candy and iced water and was allowed to go to the restroom. He was not handcuffed or shackled in any way; his movement was not restricted.
Assistant district attorney, Pat Berrigan, testified that he received a telephone call about 1:00 a. m., August 14, 1975, asking that he go to the police station to act as an impartial observer of the interrogation. He arrived at Lt. Humphrey's office about 1:30 a. m., at which time he asked defendant if he had been mistreated. Defendant had no complaints. Later that morning, Mr. Berrigan repeated the inquiry. Defendant replied: "No, I am fine."
Lt. Humphrey, chief of criminal investigation, was called in at this time. He felt that defendant would feel more at ease if questioned by one officer alone. Lt. Humphrey testified that he selected Officer Penton to talk with defendant because he was the oldest and most experienced man on the force.
Officer Penton testified that he spoke with defendant alone about 4:00 a. m., after again advising defendant of his Miranda rights. Defendant told Officer Penton that the murder weapon, the jewelry, and the clothing he had worn the previous morning could be found in a woody area near defendant's residence. Defendant then signed a waiver of rights form in the presence of four officers, again being advised of his Miranda rights. He was placed under arrest for murder and booked at 4:30 a. m. The physical evidence was recovered about 5:00 a. m., pursuant to defendant's directions.
Mr. Berrigan testified that he informed defendant of the charges against him and again advised him of his Miranda rights. Mr. Berrigan further testified that he asked defendant if he wished to talk or to remain silent. In response, defendant asked to see his mother, which was allowed. Shortly thereafter, defendant made an oral inculpatory statement which was later typed. Defendant's statement to Berrigan was made about 5:30 a. m. Defendant, after again having been advised of his Miranda rights, made another confession which was taped about 6:30 a. m. by Lt. Humphrey.
About 8:00 a. m., Dr. John Epling examined defendant. Dr. Christy Graves of Ochsner Foundation Clinic made an independent examination of defendant about 8:50 a. m. Both doctors testified that they asked defendant if he had any complaints and that defendant complained only of a few minor medical problems totally unrelated to this case. Both doctors further testified that they specifically examined defendant for signs of physical abuse but found none. It was also the opinion of both doctors that physical abuse would definitely result in visible indications thereof.
Defendant's testimony at the suppression hearing differs in many respects from that of the state's witnesses. Defendant testified that the outer door to the police building was locked immediately upon his entrance and that he never felt that he was free to leave. He stated that he was physically abused and that the police threatened to arrest his mother and girlfriend if he did not confess to the murder. Defendant also testified that he was given the impression that he would receive only a short sentence if he confessed. Defendant further alleged that he asked to leave or to obtain counsel but was not granted either request. However, defendant did admit that he did not mention any complaints about his alleged mistreatment to either Dr. Epling or Dr. Graves. Defendant's mother, who testified at the trial on the merits, was not called as a witness by defendant at the suppression hearing.
Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451; La.Code Crim.P. art. 703(C). It must also be established that an accused *708 who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A confession need not be the spontaneous act of the accused and may be obtained by means of questions and answers. La.R.S. 15:453; State v. Adams, 347 So.2d 195 (La. 1977); State v. Ross, 343 So.2d 722 (La. 1977); State v. Cotton, 341 So.2d 355 (La. 1976). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. State v. Adams, supra; State v. Ross, supra; State v. Demourelle, 332 So.2d 752 (La.1976); State v. Sims, 310 So.2d 587 (La.1975).
In the instant case, defendant's allegations that he was promised leniency on pending charges if he confessed to the crime and that he was physically abused during interrogation are uncorroborated. The testimony of four police officers and the assistant district attorney directly conflicted with defendant's version of the alleged coercive and abusive tactics used to induce him to make the confessions. Two physicians testified that defendant exhibited no signs of physical abuse and had no relevant complaints.
After reviewing the record, we are convinced, as was the trial judge, that the state satisfied its burden of affirmatively proving that the statements were freely and voluntarily made after defendant had been fully advised of his Miranda rights. State v. Adams, supra; State v. Ross, supra; State v. Demourelle, supra; State v. Sims, supra. Accordingly, the trial judge did not err in ruling that defendant's statements were freely and voluntarily made.
It is conceded that the admissibility of the physical evidence is dependent upon the voluntariness of defendant's statement to Officer Penton in which defendant told where he had hidden the evidence. Having found that this statement, as well as the other two, was freely and voluntarily made after having been fully advised of his Miranda rights, the physical evidence was admissible. Hence, we find the trial judge did not err in denying defendant's motion to suppress the evidence nor in admitting the evidence at trial.
Assignments of Error Nos. 5, 6 and 17 are without merit.

ASSIGNMENTS OF ERROR NOS. 7, 10 AND 11
Defendant contends the trial court erred in denying his motion to quash the indictment and his motion in arrest of judgment and also in imposing an illegal sentence. Defendant argues that, since the death penalty for first degree murder under La.R.S. 14:30 (1973) was declared unconstitutional, the entire statute is invalid.
In Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), the United States Supreme Court declared Louisiana's mandatory death penalty for first degree murder unconstitutional. The Court reaffirmed its position in Roberts v. Louisiana, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977), by declaring Louisiana's mandatory death penalty for first degree murder unconstitutional even when predicated upon the murder of a police officer. According to decisions of this court under the mandate of Roberts (1976), the appropriate sentence is the most severe penalty established by the legislature for criminal homicide at the time of the offense. State v. Jenkins, 340 So.2d 157 (La.1976); State v. Clark, 340 So.2d 208 (La.1976), cert. denied, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977). In the instant case, the crime was committed on August 13, 1975. The most severe valid penalty for criminal homicide applicable on that date was the penalty for second degree murder, life imprisonment at hard labor without eligibility for parole, probation or suspension of sentence for twenty years. Moreover, this court has held that the unconstitutionality of the penalty provision of La.R.S. 14:30 (1973) does not render the entire statute invalid. State v. Abney, 347 So.2d 498 (La.1977); State v. McDaniel, 340 So.2d 242 (La.1976). Hence, the trial *709 judge did not err in denying defendant's motion to quash the indictment and motion in arrest of judgment nor in imposing a sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for twenty years.
Assignments of Error Nos. 7, 10 and 11 are without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant contends the trial court erred in denying his motion to quash the grand and petit jury venires from which the juries were drawn which indicted and tried defendant. Defendant argues that women were systematically excluded from the jury venires, thereby denying him the right to be indicted and tried by a fair cross-section of the community.
In support of his motion to quash the jury venires, defendant stipulated to and relied solely upon the statistical evidence introduced on the identical issue in State v. Taylor, 347 So.2d 172 (La.1977). In Taylor, this court found that the defendant failed to prove a systematic exclusion of women from the jury venires. Since defendant in the instant case offers no further evidence of systematic exclusion of women from the jury venires, Assignment of Error No. 8 is without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends the trial court erred in denying his motion for a new trial on the grounds urged in assignments of error on appeal. For reasons previously and hereinafter assigned, we find no merit to Assignment of Error No. 9.

ASSIGNMENT OF ERROR NO. 12
Defendant contends the trial court erred in denying his motion for a change of venue.
At a hearing on various pretrial motions, the trial judge reserved his ruling on the motion for a change of venue until the day of trial. No evidence on the venue issue was offered at this hearing. Some four months later before a different judge, trial commenced without any ruling on the motion. After the first day of trial, the court noted that there had been no ruling on defendant's motion for a change of venue. Defense counsel stated that the matter had "slipped [his] mind." He also stated that the only basis for his request for a change of venue was that the victim was popular and the pretrial publicity was so widespread that many of the jurors knew of the case. Defendant offered no evidence at this time nor did he request a recess to subpoena news representatives and other witnesses or to present other evidence of extensive publicity.
The grounds for a change of venue are set forth in article 622 of the Code of Criminal Procedure as follows:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
To warrant a change of venue, the burden is upon the accused to establish that he cannot obtain a fair trial in the parish where the prosecution is pending. Article 622 requires a showing of more than mere knowledge by the public of facts surrounding the offense. It requires, in addition, proof of such prejudice in the public mind that a fair and impartial trial cannot be obtained in the parish. State v. de laBeckwith, 344 So.2d 360 (La.1977); State v. Berry, 329 So.2d 728 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976); State v. Dillard, 320 So.2d 116 (La.1975); State v. Flood, 301 So.2d 637 (La.1974), cert. denied, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); State v. Richmond, 284 So.2d 317 (La. 1973).
*710 The granting or denial of a motion for a change of venue rests within the sound discretion of the trial judge, and his ruling denying the motion will not be disturbed unless the evidence affirmatively shows that the ruling was erroneous and an abuse of judicial discretion. State v. de laBeckwith, supra; State v. Berry, supra; State v. Dillard, supra.
In the instant case, defendant offered no evidence in support of his motion for a change of venue. He merely alleged that the motion should be granted because the victim was popular and many of the jurors knew about the case due to pretrial publicity. Even were defendant able to prove his allegations, such proof would not have been sufficient to warrant a change of venue. La.Code Crim.P. art. 622; State v. de laBeckwith, supra. In any event, absent a showing that a fair and impartial trial could not be obtained in St. Tammany Parish, defendant was not entitled to a change of venue. No such showing was made. Hence, the trial judge did not abuse his discretion in denying defendant's motion for a change of venue.
Assignment of Error No. 12 is without merit.

ASSIGNMENT OF ERROR NO. 13
Defendant contends the trial judge erred in admitting in evidence two photographs of the deceased victim. In brief, defendant argues that the photographs were so gruesome that any probative value was outweighed by their prejudicial effect upon the jury.
The first photograph depicts the deceased at the scene of the alleged murder. The second photograph shows the location and nature of the wounds inflicted. Defendant objected to the introduction in evidence of both photographs but failed to state any basis for his objection at that time.
Article 841 of the Code of Criminal Procedure provides that an irregularity or error cannot be availed of after verdict unless defendant has made known to the court his objection and the grounds therefor. It is well settled that defendant must state the basis for his objection when he makes it so that the trial judge has an opportunity to rule on it and prevent or cure an error. An objection stating no basis presents nothing for this court to review. State v. Burnette, 337 So.2d 1096 (La.1976); State v. Sosa, 328 So.2d 889 (La.1976). In any event, it is well established that the test of admissibility of allegedly gruesome photographs is whether their probative value outweighs the possible prejudice that may result from their display to the jury. State v. Williams, 343 So.2d 1026 (La.1977); State v. Cooper, 334 So.2d 211 (La.1976); State v. Smith, 327 So.2d 355 (La.1976). Photographs of the body of a deceased victim have generally been held relevant to prove the corpus delicti; to corroborate other evidence of the manner in which death occurred; to establish the location, severity and number of wounds; and to establish the identity of the victim. State v. Williams, supra; State v. Cooper, supra; State v. Beach, 320 So.2d 142 (La.1975).
After examining the photographs in question, we do not consider that they are gruesome. Moreover, both photographs were relevant to prove the identity of the murder victim and to corroborate the testimony concerning the manner in which the victim was killed; and the first photograph, taken at the scene of the alleged murder, was also relevant to corroborate the testimony concerning the location of the crime. Since the probative value of the photographs outweighs any possible prejudicial effect, the trial judge did not err in admitting them in evidence.
Assignment of Error No. 13 is without merit.

ASSIGNMENT OF ERROR NO. 14
Defendant contends the trial judge erred in denying his motion for a mistrial on the ground that a state witness referred to "a jail card" during his examination by the state. He argues that this constituted an indirect reference to another crime committed by defendant as to which evidence was not admissible.
*711 At trial, the state asked a police officer what action he had taken in response to certain information he had received. The witness answered: "I went to the City Police Department and pulled a jail card to check." Defendant objected and moved for a mistrial. The trial judge denied the motion but admonished the jury to disregard the witness' last response, without repeating the reference to the jail card.
A direct or indirect reference to another crime committed or alleged to have been committed by defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument, would require a mistrial on motion of defendant. La.Code Crim.P. art. 770(2). First, a police officer is not a "court official"; therefore, article 770 does not apply. Rather, article 771 of the Code of Criminal Procedure would be the applicable article. State v. Hardy, 344 So.2d 1018 (La.1977); State v. Jones, 332 So.2d 466 (La.1976); State v. Lepkowski, 316 So.2d 727 (La.1975); State v. Clark, 288 So.2d 612 (La.1974).
La.Code Crim.P. art. 771 provides in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
. . . . .
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
We do not find, nor does defendant claim, that the allegedly impermissible remark was deliberately obtained by design of the prosecutor to prejudice the rights of defendant. The police officer's answer was unsolicited and unresponsive to the prosecutor's question and was not deliberately uttered by the witness to prejudice defendant. Unsolicited and unresponsive testimony is not chargeable against the state to provide a ground for the reversal of a conviction. State v. Hardy, supra; State v. Jones, supra; State v. Luneau, 323 So.2d 770 (La.1975); State v. Lewis, 315 So.2d 626 (La.1975); State v. Gabriel, 308 So.2d 746 (La.1975). No further mention was made of the jail card during trial; the trial judge was careful even in his admonition to the jury to avoid mention of the jail card. Under the circumstances, we do not find that the isolated reference to the jail card by this witness was of any consequence. We consider that the admonition was sufficient to assure defendant a fair trial. Hence, the trial judge did not err in denying defendant's motion for a mistrial. Recently in State v. Hardy, supra, this court also found that the trial judge did not err in denying a motion for a mistrial where the detective, under circumstances similar to those presented here, made a reference to "jail cards."
Assignment of Error No. 14 is without merit.

ASSIGNMENTS OF ERROR NOS. 15 AND 16
Defendant contends the trial court erred in accepting Ms. Linda Reel as an expert in the fields of serology and fiber analysis and in allowing her to express an opinion as an expert in fiber analysis. Defendant argues that Ms. Reel had insufficient qualifications in these fields.
La.R.S. 15:466 sets out the guidelines for the qualification of expert witnesses:
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so *712 to testify must have been established to the satisfaction of the court.
We have consistently held that the competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge. His rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. State v. Madison, 345 So.2d 485 (La. 1977); State v. Marks, 337 So.2d 1177 (La. 1976); State v. Vassel, 285 So.2d 221 (La. 1973). The record discloses that Ms. Reel holds a Bachelor of Science degree in biology from St. Mary's Dominican College and a Master of Science degree in biology from Tulane University. She attended two specialized courses at the FBI Academy in Quantico, Virginia, one in criminalistics and the other in biochemical and serological methods in blood stain analysis. She has been employed as a criminalist at the Jefferson Parish Sheriff's Office crime laboratory for three years, specializing in serology and carrying the responsibility for all body fluid analyses and all hair and fiber analyses in the laboratory. Ms. Reel also teaches criminalistics and biology at St. Mary's Dominican College. She has been accepted as an expert witness in other courts in Louisiana. We cannot, therefore, find that the trial judge abused his discretion in overruling defendant's objection to Ms. Reel's qualifications as an expert nor in allowing Ms. Reel to give an opinion as an expert in fiber analysis.
Assignments of Error Nos. 15 and 16 are without merit.

ASSIGNMENTS OF ERROR NOS. 18 AND 19
Defendant contends the trial court erred in overruling his objections to two questions which the state asked defendant under cross-examination.
During trial on the merits, defendant elected to testify on his own behalf. On two separate occasions during cross-examination, the state asked defendant to comment upon the veracity of other witnesses. The first question was: "Pervis Weeden was wrong when he said you had on a white shirt, wasn't he?" Defendant objected on the ground that the question called for a conclusion which the jury should make. The trial court overruled the objection. The second question occurred as follows:
Q. You heard Mr. Berrigan say he never promised you anything, didn't you?
A. I heard him say that.
Q. So he was lying too, wasn't he?
Defendant objected to the question on the ground that it was an improper question, invading the province of the jury. The trial court overruled the objection.
In State v. Richardson, 337 So.2d 210 (La.1976), this court dealt with a similar issue. In Richardson, the prosecutor asked the defendant if the state's witnesses were perjurers and liars. This court stated:
Such crude efforts at cross-examination are not be be encouraged, but we are not convinced that there has been such an abuse of the trial judge's discretion that a reversal is appropriate.
In the discipline of his court, the trial judge is given wide discretion in controlling the examination of witnesses. La.R.S. 15:275. Unless an abuse of this discretion is shown, a conviction will not be reversed. State v. Moore, 344 So.2d 973 (La.1977); State v. Kaufman, 331 So.2d 16 (La.1976), cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1977). We find no such abuse of discretion in the instant case.
Assignments of Error Nos. 18 and 19 are without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
DENNIS, J., concurs and assigns reasons.
DENNIS, Justice, concurring.
While I concur with the result reached in the first assignment of error, i.e., that an in camera hearing of pre-trial motions is not warranted under the facts presented by this case, the majority opinion should not be read to foreclose the possibility of conducting such hearings pursuant to a request made by the defendant.
*713 Section 3.1 of the American Bar Association Project on Standards for Criminal Justice, Fair Trial and Free Press (Approved Draft 1968) discusses the possibility of conducting pre-trial hearings in camera to insure a defendant of his right to a fair trial by an impartial jury:
"It is recommended that the following rule be adopted in each jurisdiction by the appropriate court:
"Motion to exclude public from all or part of pretrial hearing.
"In any preliminary hearing, bail hearing, or other pretrial hearing in a criminal case, including a motion to suppress evidence, the defendant may move that all or part of the hearing be held in chambers or otherwise closed to the public, including representatives of the news media, on the ground that dissemination of evidence or argument adduced at the hearing may disclose matters that will be inadmissible in evidence at the trial and is therefore likely to interfere with his right to a fair trial by an impartial jury. The motion shall be granted unless the presiding officer determines that there is no substantial likelihood of such interference. With the consent of the defendant, the presiding officer may take such action on his own motion or at the suggestion of the prosecution. Whenever under this rule all or part of any pretrial hearing is held in chambers or otherwise closed to the public, a complete record of the proceedings shall be kept and shall be made available to the public following the completion of trial or disposition of the case without trial. Nothing in this rule is intended to interfere with the power of the presiding officer in any pretrial hearing to caution those present that dissemination of certain information by any means of public communication may jeopardize the right to a fair trial by an impartial jury."
In the present case the defendant made no showing to the trial judge that an in camera hearing was warranted. There is no mention in the record that newspaper reporters or other representatives of the press were present in the courtroom when the pre-trial hearings were conducted nor did defendant make any allegations concerning the extent of pre-trial publicity up to that time. Under these circumstances the trial judge did not abuse his discretion in denying defendant's motion. Cf., Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), at n.8; State v. Rittiner, 341 So.2d 307 (La. 1976).
NOTES
[1] La.R.S. 14:30 (1973) provides in pertinent part:

First degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated rape or armed robbery; or
(2) When the offender has a specific intent to kill, or to inflict great bodily harm upon, a fireman or a peace officer who was engaged in the performance of his lawful duties;
. . . . .
For the purposes of paragraph (2) herein, the term peace officer shall be defined and include any constable, sheriff, deputy sheriff, local or state policeman, game warden, federal law enforcement officer, jail or prison guard, parole officer, probation officer, judge, district attorney, assistant district attorney or district attorneys' investigator.
Whoever commits the crime of first degree murder shall be punished by death.
[2] Defendant has neither briefed nor argued Assignment of Error No. 3. Therefore, we consider this assignment of error to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976) and State v. Carlisle, 315 So.2d 675 (La. 1975).
[3] La.Const. art. 1, § 16 guarantees every person charged with a crime the right to a public trial.