298 So.2d 823 (1974)
STATE of Louisiana
v.
Joan T. NORMAND.
No. 54633.
Supreme Court of Louisiana.
July 1, 1974.
Rehearing Denied August 30, 1974.
*824 J. Michael Small, Gravel, Roy & Burnes, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Alfred B. Shapiro, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
As a result of her shooting Robert Jennings five times at close range at the Westgate Shopping Center in Alexandria, Louisiana, Joan T. Normand was charged with second degree murder. R.S. 14:30.1. *825 She was convicted after a trial by jury and sentenced to life imprisonment. Defendant appeals to this Court.[1]

BILL OF EXCEPTIONS NO. 1
A motion to quash challenged the legality of the grand jury indictment and sought a declaration that Article VII, Section 41 of the Louisiana Constitution, as well as Article 402 of the Code of Criminal Procedure, are unconstitutional. The attack upon the grand jury composition, as well as the general venire and petit jury venire, is that they were improperly drawn, selected and constituted for the reason that members of the female sex were arbitrarily and capriciously excluded from service on these bodies. Defendant, a female, urges that she was denied a fair cross-section of the community to which she is entitled under the due process clauses of the Louisiana and the United States Constitutions. She also asserts that she has been denied her rights guaranteed by the equal protection clause of the Fourteenth Amendment of the United States Constitution.
This Court has consistently upheld our constitutional (Article VII, Section 41) and statutory (Article 402 C.Cr.P.) law exempting women from jury service as not violative of the due process and equal protection clauses. State v. Washington, 292 So.2d 234 (La.1974); State v. Leichman, 286 So.2d 649 (La.1973). Likewise, we rejected the same contention of a woman defendant indicted for murder in considering her motion to quash on the ground that women were excluded from jury service in State v. Stevenson, 292 So.2d 488 (La. 1974).
Bill of Exceptions No. 1 is without merit.

BILLS OF EXCEPTIONS NOS. 2 and 17
The denial of a request by defendant to sequester the jury during trial in accordance with Article 791 C.Cr.P. resulted in the reservation of Bill of Exceptions No. 2. Bill of Exceptions No. 17 was taken when the court charged the jury that only nine of twelve jurors had to agree upon a verdict.
The issue presented by these related bills is whether the system of classification of crimes as announced in State v. Holmes, 263 La. 685, 269 So.2d 207 (1972) and State v. Flood, 263 La. 700, 269 So.2d 212 (1972) still applies to require that, after each juror is sworn, he shall be sequestered under Article 791 C.Cr.P. and that all twelve jurors must concur to render a verdict under Article 782 C.Cr.P.
Following this Court's decisions in Holmes and Flood, the Legislature of this State in 1973 amended former R.S. 14:30 to classify murder in two categories, first and second degree. The penalty for the crime of first degree murder is a mandatory death sentence under present R.S. 14:30. Thus, first degree murder is a "capital offense" as defined by the Code of Criminal Procedure. Second degree murder is defined and punished as set forth in R.S. 14:30.1. Since the penalty for second degree murder is life imprisonment, it is not a "capital offense." This Court so held in State v. Washington, 294 So.2d 793, handed down April 29, 1974.
Article 791 C.Cr.P. makes mandatory the sequestration of each juror after he is sworn only in capital cases; Article 782 C.Cr.P. requires a unanimous jury verdict from a twelve-man jury only in capital cases. Since second degree murder under R.S. 14:30.1 is not now classified as a capital offense, the trial court was correct in denying defendant's request to sequester the jury during the trial and in its charge to the jury that only nine of twelve jurors had to agree upon a verdict.
Bills of Exceptions Nos. 2 and 17 are without merit.

*826 BILLS OF EXCEPTIONS NOS. 3, 4 and 5
These bills were reserved during voir dire examination of prospective juror, Clyde Ray Greer. On each occasion that defendant sought to challenge this juror for cause, the court refused his challenge. Defendant contends that the trial judge committed reversible error in refusing to sustain a challenge for cause. Also, defendant exhausted all of his peremptory challenges before completion of the panel. Article 800 C.Cr.P.
The prospective juror Greer was interrogated by defense counsel and the judge. It is submitted by defendant that the responses of this juror show that he had an opinion that a person charged with a serious crime was guilty and he would require a "showing" to establish his innocence. Thus, defendant urges that the juror was impartial and subject to challenge for cause under Article 797(2) C.Cr.P.
Defendant admits that when Greer was questioned by the judge, he responded that he would render a fair and impartial verdict based upon the law and evidence. However, the implication is that answers given to the judge are not the usual answers which might be given in response to interrogation by counsel.
Defendant concedes that the cases in Louisiana on this issue make clear that each case turns on its own particular facts, and resolution of the ultimate question depends upon the court's interpretation of the prospective juror's testimony.
Article 797 C.Cr.P. provides in pertinent part:
"The state or the defendant may challenge a juror for cause on the ground that:

* * * * * *
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;"

* * * * * *
Further, it is a well-established rule in our jurisprudence that a trial judge's exercise of sound discretion in ruling on qualifications of prospective jurors will be sustained unless unwisely exercised, provided he allows considerable latitude on voir dire examination. State v. Square, 257 La. 743, 244 So.2d 200 (1971) and State v. Rogers, 241 La. 841, 132 So.2d 819 (1961), cert. den. 370 U.S. 963, 82 S.Ct. 1589, 8 L.Ed.2d 830.
After a careful reading of the voir dire examination of this prospective juror, we find that he was a good juror who could render an impartial verdict according to the law and evidence. While the juror Greer honestly and candidly admitted that his first impression, like many people, was that a person charged with a serious crime was probably guilty, a fair interpretation of his entire testimony is that he could put aside this impression and render an impartial verdict based upon the law and evidence. He steadfastly repeated that he accepted the fact that a person is innocent until proven guilty, that he would require evidence to prove defendant's guilt beyond a reasonable doubt, and that he could be a fair and impartial juror. Thus, we conclude that the trial judge did not abuse his discretion in refusing to sustain defendant's challenge of this juror for cause. State v. Heard, 263 La. 484, 268 So.2d 628 (1972).
Bills of Exceptions Nos. 3, 4 and 5 are without merit.

BILL OF EXCEPTIONS NO. 7
This bill was reserved when defendant, after completion of voir dire examination of the prospective juror Samuel Johnson, requested and was denied an extra *827 peremptory challenge. It is contended that, since the court erroneously denied the challenge for cause as to prospective juror Greer (Bills of Exceptions Nos. 3, 4 and 5), defendant had to use a peremptory challenge to remove Greer. Thus, defendant had no peremptory challenges left at the time she wished to exercise a peremptory challenge to the prospective juror Samuel Johnson. The same arguments are made in this bill as advanced in Bills Nos. 3, 4 and 5. The discussion under those bills amply answers the contentions advanced in this bill. In view of the conclusion that Bills Nos. 3, 4 and 5 are without merit, it follows that this bill is also without merit.

BILL OF EXCEPTIONS NO. 9
This bill was reserved to the sustaining of the objection by the State to the question asked by counsel for the defendant of the State witness Booker Mitchell: "Allright, and did you tell me to come to your office and indicate that you would discuss it with me?"
The objection of the State is that the fact that Mitchell told counsel for defendant he would discuss the case with him at his office was not relevant to the case and had nothing to do with the guilt or innocence of the accused.
Counsel for the defendant stated (out of the presence of the jury) that he sought to establish by this questioning that this witness had indicated to counsel that if he came to the office of the witness and talked to him person to person, rather than on the telephone, that Mitchell would discuss the facts of the case. However, after counsel came to the office, defense counsel stated Mitchell "changed his mind once I got there, apparently at the behest of an assistant District Attorney and told me that on the contrary it was at the advice of his attorney." Defendant argues that he should have been allowed to show that Mitchell, an eye-witness to the shooting incident giving rise to the charge herein, was influenced by the assistant district attorney. This is an argument seeking to place the issue under the provisions of R.S. 15:492 which provides:
"When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admits such fact, any other witness may be examined to establish the same."
The fact that this witness changed his mind about discussing the facts of the case with defense counsel after conversation with the assistant district attorney or upon advice of his attorney is of no moment. There is no contention of any "corruption" of the witness or that he had an "interest." At most, "bias" is alleged in that the witness was influenced by the assistant district attorney.
The State submits in brief that it is at a loss to understand how the question of whether or not the witness would discuss the case with counsel for the defendant has any bearing on his bias for or against the defendant. We agree. No error exists in the ruling of the trial judge. In any event, we are unable to see how defendant was prejudicied in any way by this ruling.
Bill of Exceptions No. 9 is without merit.

BILLS OF EXCEPTIONS NOS. 11 and 12
When the prosecution was allowed, over objection of defendant, to introduce into evidence and display to the jury two photographs depicting the deceased, Bills of Exceptions Nos. 11 and 12 were reserved.
Defendant submits that the photographs in this case had no probative value whatsoever and could only serve to unduly influence the jury. She states that her counsel, *828 in opening statement, informed the jury that it would not be disputed that she shot the decedent; nor would it be disputed that the shots fired by her resulted in his death. Furthermore, Dr. William Henry Thomas testified as to the number of gunshot wounds and the exact location of each. Hence, the photographs added nothing to the State's case.
On the other hand, the State urges that the photographs have considerable probative value as showing the position in which the victim was found in the car and also depicting the location of the bullet wounds. We agree. Further, an examination of the photographs shows them to be innocuous and without prejudicial effect.
Hence, we conclude that the probative value of the photographs introduced into evidence outweighs any possible prejudicial effect. State v. McCauley, 272 So.2d 335 (La.1973).
Bills of Exceptions Nos. 11 and 12 are without merit.

BILL OF EXCEPTIONS NO. 13
The defendant claims error in the ruling of the trial judge that certain inculpatory statements made by the defendant could be introduced into evidence without prior notification by the State of its intention to introduce these statements, as required by Article 768 of the Code of Criminal Procedure.
The State's brief correctly answers this contention of defendant. Article 768 C.Cr. P. prescribes no formal method of giving the notice required by this article for it merely provides that the State must advise defendant in writing prior to the beginning of the opening statement. In its answer to the supplemental motion for a bill of particulars, the State sets forth in detail the oral communications, admissions or statements made by defendant. The dates and to whom these statements were made are recited. The State reserved its right to introduce at trial any statements which might come to its attention in the future, leaving the clear implication of its intention to introduce the statements set forth in its answer.
We find that the aforesaid constitutes substantial compliance by the State with Article 768 C.Cr.P.
Furthermore, this Court held in State v. Jackson, 260 La. 561, 256 So.2d 627 (1972) that, if notice is not given as required under Article 768, inadvertently and in good faith, the trial court may nevertheless admit the inculpatory statement under Article 769 of the Code of Criminal Procedure "if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense." This pronouncement is appropriate here.
Bill of Exceptions No. 13 is without merit.

BILLS OF EXCEPTIONS NOS. 14 and 15
Bill of Exceptions No. 14 was reserved to the trial court's ruling allowing into evidence the statement made by defendant to the police officers at the scene that she had "shot the hell out of him" prior to being given the Miranda warnings. Bill of Exceptions No. 15 was reserved to the ruling of the court allowing into evidence certain statements made by the defendant to Officer Cardwell while on her way to the police station and after she had been advised of her Miranda rights. It is urged that the latter statements were "tainted" because of the lack of the Miranda warnings initially.
According to the record, defendant shot Robert Jennings, her common-law husband, five times at close range with a .32 caliber pistol in the parking lot of the Westgate Shopping Center on MacArthur Drive in Alexandria, Louisiana. After this shooting, defendant crossed the street to the Exxon Station and there telephoned the police. Upon arrival at the scene of the shooting, Officer Melancon observed the *829 victim in the car with blood running down his left arm. He then received a message over the air from the radio operator that a woman had reported the shooting from an Exxon Station across the street. No name or description of defendant was given to Officer Melancon. Officer Cardwell testified that, upon arrival at the scene of the crime, the victim informed him that his assailant had headed toward the Exxon Station. Officer Cardwell immediately transmitted this information to Officer Melancon who was in the police vehicle. Thereupon, Officer Melancon proceeded in the direction of the service station in his vehicle while Officer Cardwell proceeded in that direction on foot. Officer Melancon saw defendant as she was walking across the street headed back toward the scene of the shooting. As he approached her, he got out of his vehicle. Officer Cardwell arrived at this location at about the same time. Officer Melancon asked defendant if she knew anything about the shooting to which she replied: "Yes, I shot the hell out of him." She was thereafter placed under arrest by Officer Cardwell, and Officer Melancon gave her the Miranda warnings. It should be pointed out that both officers testified that they received a call at 1:12 p. m. to proceed to the shopping center where there had been a shooting; Officer Melancon testified that he arrived at the scene of the shooting at 1:15 p. m., and defendant was read the Miranda warnings at 1:17 p. m. On the way back to the police station in the police vehicle, defendant was again administered the Miranda warnings by Officer Cardwell. It was at this time that defendant made further inculpatory statements.
Defendant contends that the statement at the scene of the shooting was improperly allowed in evidence since it violated the rule of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (Bill of Exceptions No. 14). Defendant further urges that the statements made to Officer Cardwell while on the way back to the police station and after having been advised of her Miranda rights were also incorrectly allowed in evidence since they were "tainted" because of the lack of Miranda warnings initially (Bill of Exceptions No. 15).
The State contends the statement at the scene, and those later made to the police officers in the car on the way to the station after the defendant was given the Miranda warnings, were admissible under the circumstances in this case and the holding of this Court in State v. Levy, 292 So.2d 220 (La.1974).
We find that our decision in State v. Levy is controlling here. In Levy, defendant had shot her common-law husband in a bar. She then went outside and sat in his car, parked nearby across the street. The investigating officer arrived about three minutes later. From bystander-witnesses, he learned that the dying man's name was Willie Francois and that his wife, Elizabeth Francois, had shot him. The officer was also informed by the bystanders that she was sitting in her white Ford outside. As the officer walked across to a white car with a lady sitting in it, one of the bystanders yelled: "That's his wife sitting in the car." The officer then asked the lady her name, and she replied "Elizabeth Francois Levy." Having been informed that the victim's surname was Francois, the Levy portion of the name puzzled the officer. In order to clearly identify her as the suspect, the officer then asked her: "Is that your husband in there?" She replied: "Yes that's my husband and I shot the son of a bitch. I shot him, because he slapped me." She was then asked by the officer where the gun was, and she answered that it was in her purse. The officer asked for and was granted permission by her to retrieve it from the purse. She was then placed under arrest and given the Miranda warnings.
We stated in Levy:

"Miranda prohibits the use of statements `stemming from custodial interrogation of the defendant,' in the absence of the *830 procedural safeguards required by this decision, such as informing the accused person of his right to remain silent. 384 U.S. 444, 86 S.Ct. 1612. Custodial interrogation means `questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' Id. `This is what we meant in Escobedo [cited below] when we spoke of an investigation which had focused on an accused.' Id., at Footnote 4.
"On the other hand, the court in Miranda specifically noted: `Our decision is not intended to hamper the traditional function of police officers in investigating crime.... General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding.... In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.' 384 U.S. 477-478, 86 S.Ct. 1629-1630.
"Nevertheless, an earlier decision, Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), whose holdings were amplified by Miranda, had marked the area requiring constitutional safeguard as where `the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect', 378 U.S. 490, 84 S.Ct. 1765. See State v. Tarrance, 252 La. 396, 211 So.2d 304, 309 (1968). See also Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969)."
Viewed in this light, the question here, as the questions in Levy, were clearly of the same nature, i. e., purely of an investigatory nature. The Levy questions: "What is your name?" and "Is that your husband in there?" were considered by us simply to ascertain that this lady was indeed the suspect the officer sought to detain.
The present situation is somewhat analogous. However, here, the information in the police officers' possession as to the suspect was far less than in Levy. The question here was not as direct insofar as the investigation was concerned as were the questions in Levy.
Under the circumstances here presented, the initial statement without the Miranda warnings was properly admitted in evidence. It was given without the compelling influence of custodial questioning, such as is expressly excluded by Miranda, and was a spontaneous non-responsive utterance to the question asked by the police officer.
It follows that the other statements thereafter given, after the Miranda warnings, were not "tainted" and were properly admitted in evidence.
Bills of Exceptions Nos. 14 and 15 are without merit.

BILL OF EXCEPTIONS NO. 18
Defendant's motion for a new trial, urging that the bills reserved disclosed prejudicial error, was denied. Bill of Exceptions No. 18 was reserved.
This bill presents nothing for review, as we have discussed the errors urged in the bills heretofore considered and found them to be without merit.
For the reasons assigned, the conviction and sentence are affirmed.
CALOGERO, J., concurs.
BARHAM, J., dissents and assigns reasons.
TATE, J., is of the opinion that the defendant, a woman, is denied the equal protection of the laws by the effective exclusion of woman from the venires from which the grand and petit jurors were selected.
*831 BARHAM, Justice (dissenting).
Again I must disagree with the majority's disposition of a female defendant's attack on the constitutionality of La.Const. Art. VII, § 41 and Code of Criminal Procedure Article 402. These provisions, in my opinion, violate a criminal defendant's state and federal constitutional rights to due process and a female criminal defendant's right to equal protection under the Fourteenth Amendment to the United States Constitution. See my dissents in State v. Stevenson, 292 So.2d 488 (La. 1974) and State v. Enloe, 276 So.2d 283 (La.1973).
I further disagree with the majority's conclusion that those statements given in answer to defendant's supplemental bill of particulars concerning defendant's inculpatory statements constitute substantial compliance with Code of Criminal Procedure, Article 768. The majority clearly admits that the State's answer contained only a "* * * clear implication of its intention to introduce the statements * * *." Such implication does not amount to written notice.
In further discussion of defendant's bill of exceptions dealing with the admission into evidence of an inculpatory statement as to which no written notice of the State's intention to introduce was given, the majority notes our decision in State v. Jackson, 260 La. 561, 256 So.2d 627 (1972). In Jackson we stated:
"* * * by reason of Article 769, if the state inadvertently and in good faith fails to notify [the defendant of its intention to use inculpatory statements] in advance of the trial, the trial court may nevertheless admit the inculpatory statement `if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense'. * * *"[*]
(Emphasis supplied.)
While the testimony attached to the bill of exceptions clearly shows that the trial court found that defendant was aware of the existence of the inculpatory statements, nothing attached to the bill reveals a finding that the defendant was not taken by surprise or prejudiced by the failure of the State to give notice of its intention to introduce the inculpatory statements. Nor has there been a finding by the majority that defendant was not surprised or prejudiced by the State's failure to give the written notice required by C.Cr.P. Art. 468.
Since the majority has not made the findings required by the Jackson decision, I conclude that it would not hold this failure to strictly comply with C.Cr.P. Art. 468 to be reversible error under any circumstances. I could not acquiesce in such a holding.
For the aforestated reasons, I respectfully dissent.
NOTES
[1] Eighteen bills of exceptions were reserved during the course of trial; however, Nos. 6, 8, 10 and 16 have been abandoned.
[*] C.Cr.P. Art. 769 reads:

"Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence.
"If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense."