320 So.2d 142 (1975)
STATE of Louisiana
v.
Daniel F. BEACH.
No. 56230.
Supreme Court of Louisiana.
October 1, 1975.
Rehearing Denied October 31, 1975.
*143 Michael Aloise, Jr., Law Offices of Anthony J. Guarisco, Jr., Morgan City, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Bernard E. Boudreaux, Jr., Walter J. Senette, Jr., Asst. Dist. Attys., for plaintiff-appellee.
MARCUS, Justice.
Daniel F. Beach was indicted by the grand jury for the first degree murder of Lee G. Newsom while engaged in the perpetration of armed robbery in violation of La.R.S. 14:30. He was tried by jury, found guilty of second degree murder, and sentenced to imprisonment at hard labor for life without benefit of parole, probation or suspension of sentence for a period of twenty years. He perfected four bills of exceptions reserved at trial. On appeal to this court, he assigns three errors based on these bills for reversal of his conviction and sentence.

*144 FACTS
On February 12, 1974, Lee G. Newsom was found dead in a hotel room in Morgan City. The day before he had checked in the hotel with Daniel F. Beach and Lawrence Scott, who were assigned a room connecting with his. The three men were seen together in a nearby cafe on the night before the body was discovered. The victim, Newsom, had been strangled with a strip of towel which was wrapped around his neck. He had a gag in his mouth and his hands and feet were tied with other strips of towel. He had been beaten about the face, and there also appeared a number of small puncture wounds in the area of his throat. A broken bottle was found next to his body which was lying on the bed in a pool of blood. Other small strips of towel were found in the connecting room occupied on the night of the crime by Beach and Scott. Cause of death was listed as asphyxia due to strangulation. Both Beach and Scott were AWOL from the Marine Corps. They had gone to Morgan City to seek employment offshore. Several job applications had been filled out in furtherance of this purpose. On the day prior to the murder, they had met Newsom who agreed to help them find a job. Defendant related the events which occurred on the night of the crime and also accounted for his whereabouts until surrendering to the authorities in Charlotte, North Carolina, on February 23, 1974. Ultimately, he was returned to Morgan City on May 18, 1974. Immediately upon his arrival at headquarters in Morgan City, Beach was given his Miranda warnings, and he executed a written waiver of rights form. Thereafter, he made an oral statement. No secretary being available at that time, Beach wrote the statement out in longhand and signed it. As he was finishing the statement, the secretary arrived. Thereupon, he was requested to dictate the statement to the secretary, which he did. The statement was immediately typed and, upon completion, was handed to him to read. After reading it, he signed his name to each of the four pages of the document.

ASSIGNMENT OF ERROR NO. 1
Defendant urges in this assignment of error that the trial judge erred in allowing in evidence certain photographs of the scene of the crime and the body of the victim. It is claimed that the photographs are so repulsive that the prejudicial effect outweighed the probative value.
There were seven photographs in all. Two showed the condition in which the victim was found in the hotel room while the remaining five photographs were of the scene of the crime. One of the photographs of the victim shows him lying on the bed with a strip of towel wrapped around his neck. The coroner had testified that the cause of death was asphyxia due to strangulation.
Generally, photographs of the body of a victim depicting the fatal wounds are relevant to prove the corpus delecti, to corroborate other evidence of the manner in which death occurred and to establish the location, severity and number of wounds, and the identity of the victim. The test of admissibility is whether the probative value of the photographs outweighs the prejudice which may result from their display to the jury. State v. Fallon, 290 So.2d 273 (La.1974). The circumstance that the photographs are gruesome does not of itself render them inadmissible. State v. Curry, 292 So.2d 212 (La.1974).
Here, the photographs were clearly admissible to corroborate the manner in which the death occurred and the expert testimony as to the cause of death. They also had probative value to show the condition in which the body was found in relation to other pieces of physical evidence and for the purpose of identifying the victim. Our review of the photographs confirms the finding of the trial judge that *145 they are not gruesome, and their probative value outweighs any possible prejudicial effects. Hence, the photographs were properly received in evidence. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Presented in this assignment of error is the issue of whether defendant understood his fifth amendment rights and voluntarily waived these rights when he gave the oral and written inculpatory statements admitted in evidence at trial.
Defendant concedes that he was given the full range of Miranda warnings, and he signed a waiver form specifically waiving these rights. Principally, he relies upon certain testimony given by Lt. Ratcliff at the motion to suppress which, he urges, indicates that, whereas defendant was told counsel would be appointed to represent him, it was only at arraignment that this would be accomplished. We find no merit to this contention.
The record clearly establishes that defendant was fully advised of his fifth amendment rights as enunciated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) by Assistant Chief Acosta in the presence of Lt. Ratcliff. A copy of the rights and waiver form was handed to defendant to follow as Asst. Chief Acosta read it to him. It was explained to defendant that he had a right to remain silent, that anything he said could be used against him in court, that he had a right to talk to a lawyer for advice before being questioned and to have him present during questioning. He was also told that if he could not afford a lawyer, one would be appointed for him before questioning if he so desired, and, if he should decide to answer questions at that time without a lawyer present, he still had a right to stop answering at any time. The waiver of rights form specifically states that he understood and knew what he was doing and that he did not want a lawyer present at that time. After Asst. Chief Acosta had read the rights and waiver form to him, defendant signed it. Thereafter, defendant made the oral and written inculpatory statements. The testimony of Asst. Chief Acosta was corroborated by Lt. Ratcliff who was present during the entire time.
The reference by Lt. Ratcliff to counsel being appointed when defendant came up for arraignment was not made until after defendant had been fully advised of his rights under Miranda, had signed the waiver form, and made the oral and written inculpatory statements. It was then that defendant questioned Ratliff as to the procedures that would follow and mentioned that when he had surrendered in North Carolina, counsel had been appointed to represent him. It is clear that the explanation given by Ratcliff regarding the appointment of counsel at arraignment was made in response to this inquiry and had reference to the events that would follow in the course of defendant's prosecution for the crime. It was entirely gratuitous and did not detract in any way from the adequacy of the warnings given to defendant and the signing of the waiver form prior to his making the inculpatory statements.[1] In our view, the record fully supports the ruling that defendant understood his fifth amendment rights and voluntarily waived same when he gave the oral and written statements. Hence, they are admissible and there is no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 3
Prior to trial, the state, in accordance with article 768 of the Code of Criminal *146 Procedure, gave notice that it intended to introduce into evidence "a confession or inculpatory statement" made by defendant. Complaint is made that two confessions were admitted at trial, one confession written and signed in defendant's own hand, and one typewritten and signed by defendant. Defendant contends he relied on the fact that only one confession was to be used at trial. Therefore, he suffered prejudice in the preparation of his defense. We find no merit in this contention.
Upon arrival in Morgan City, defendant made an oral statement relating to the events of the night of the crime. No secretary being available at that time, he wrote the statement out in longhand and signed it. As he was finishing it, the secretary arrived. Defendant then dictated a more detailed statement to the secretary who immediately typed it for his signature. In essence, these two inculpatory statements were the same, the latter being merely a more detailed version.
By way of an application for a bill of particulars, defendant sought information as to whether the state had in its possession any statements made by defendant, either verbal or in writing, which it "intends to use at the trial." The state answered "Yes." Well in advance of trial, defendant also filed a motion for oyer seeking to have the state furnish defendant with "copies of all written confessions and other written statements" made by defendant. Thereafter, a motion to suppress all written confessions was filed and set for hearing. The record of this hearing held on July 12, 1974 (some ten days prior to trial) shows that the state had previously furnished copies of the confessions to defendant in response to the prayer for oyer. During this hearing, the manner in which defendant had executed the two statements was explored in detail.
In view of the state's affirmative response indicating its intent to use at trial statements made by defendant, together with the fact that copies of the two confessions, as well as the details relating to their confection, were in the possession of defendant prior to the time that the state gave notice as required by article 768, we conclude that defendant was not surprised nor prejudiced in the preparation of his defense. Consequently, there is no reversible error.[2] Assignment of Error No. 3 is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] See State v. Cosey, 261 La. 550, 260 So.2d 620 (1972); United States v. Lacy, 446 F.2d 511 (5th Cir. 1971); Massimo v. United States, 463 F.2d 1171 (2d Cir. 1972), cert. denied, 409 U.S. 1117, 93 S.Ct. 920, 34 L.Ed. 2d 700 (1973); Wright v. State of North Carolina, 483 F.2d 405 (4th Cir. 1973), cert. denied, 415 U.S. 936, 94 S.Ct. 1452, 39 L.Ed. 2d 494 (1974).
[2] Technical deficiencies in the notice required by article 768 of the Code of Criminal Procedure do not constitute grounds for reversal unless an accused is surprised or prejudiced thereby. State v. Sneed La., 316 So.2d 372 (1975). See also State v. Watley, 301 So.2d 332 (La.1974); State v. Normand, 298 So. 2d 823 (La.1974); State v. Coates, 273 So. 2d 282 (La.1973).