420 So.2d 139 (1982)
STATE of Louisiana
v.
Joe Lewis PERRY.
No. 81-KA-2015.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
*142 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., L. K. Knapp, Dist. Atty., Evelyn Oubre, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Scotty G. Rozas, Karen Price, and Carla F. Chrisco, Lake Charles, for defendant-appellant.
MARCUS, Justice.
Joe Lewis Perry was indicted by the grand jury for the first degree murder of Bill Carr in violation of La.R.S. 14:30.[1] After trial by jury, defendant was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt. The jury unanimously recommended that a sentence of death be imposed on defendant. The trial judge sentenced defendant to death in accordance with the recommendation of the jury. Defendant designated sixteen errors to be urged on appeal in the assignment of errors filed in the district court. In disposing of the assigned errors, we have followed the numerical order (consisting of eighteen assignments of error) in defendant's brief to this court. We have treated those assignments which were neither briefed nor argued at the end of the opinion.

FACTS
On the afternoon of November 10, 1980, Joe Lewis Perry, Dwayne Smith Coleman and their girlfriends, Barbara Jeanette Briscoe and Juanita Boyce, left Houston, Texas in Coleman's car. They drove into Louisiana on Interstate 10 and stopped at the tourist information center and rest area near Toomey, Louisiana. Perry and Coleman walked around and then sat on a picnic table. While there, they observed Bill Carr, a 58-year old truck driver, stop and make a telephone call. The decision was made to rob Carr and, after he got off the phone, Perry approached him while Coleman walked around the other side of the truck. *143 Perry pointed a gun at Carr and demanded money. Carr stated that he did not have any money and started to walk toward his truck. Perry then fired four shots all of which struck Carr. Carr fell to the ground and Perry reached into the front pocket of his pants and took Carr's wallet containing $200. Perry and Coleman then returned to Coleman's car and, with their girlfriends, exited the rest area and continued eastbound on I-10. Carr died a few minutes later as a result of his wounds.
On November 17, 1980 (seven days after the murder), Barbara Briscoe, Perry's girlfriend, called the Calcasieu Parish Sheriff's Office from Dallas, Texas and advised that she had witnessed this shooting. Briscoe accompanied the deputies to Houston where defendant was arrested. Subsequently, defendant waived extradition and was returned to Louisiana.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
Defendant contends the trial judge erred in allowing the state to question prospective jurors concerning their ability to apply the death penalty (Assignment of Error No. 3) and in excusing five jurors[2] due to their sentiments regarding the death penalty (Assignment of Error No. 4). Defendant argues that the exclusion of this class of persons from the jury violates his constitutional right to be tried before a jury composed of a fair cross-section of the community.
La. Code Crim.P. art. 798 provides in pertinent part:
It is good cause for challenge on the part of the state, but not on the part of the defendant that:
....
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt;
....
This article was amended to conform with the decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), wherein the United States Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." (footnote omitted) On the other hand, the Court found no constitutional bar to excluding jurors who stated in advance of trial that they could not even consider returning a verdict of death or that their attitude about the death penalty would prevent them from making an impartial decision as to defendant's guilt. State v. George, 371 So.2d 762 (La.), cert. denied, 444 U.S. 953, 100 S.Ct. 430, 62 L.Ed.2d 325 (1979).
A review of the voir dire examination reveals that the excluded prospective jurors stated in advance of trial that they could not consider returning a verdict of death. Therefore, the jurors were properly excused in compliance with La. Code Crim.P. art. 798(2) and Witherspoon v. Illinois, supra.
There is no merit to defendant's contention that his constitutional right to be tried by a jury selected from a fair cross-section of the community has been violated when the prospective jurors have been properly excluded in compliance with La. Code Crim.P. art. 798(2) and Witherspoon v. Illinois, supra, as was done here. State v. Kelly, 375 So.2d 1344 (La.1979).
Assignments of Error Nos. 3 and 4 are without merit.

*144 ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in improperly restricting his voir dire examination of prospective jurors. He argues that he should have been permitted to discuss legislative changes and purposes of the law relative to the death penalty.
La.Code Crim.P. art. 786 provides that the court, the state and the defendant shall have the right to examine prospective jurors and the scope of the examination shall be within the discretion of the court. We have recognized that the purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Murray, 375 So.2d 80 (La.1979); State v. Jackson, 358 So.2d 1263 (La.1978).
In the instant case, there was no restriction placed on questions directed at determining the prospective jurors' attitudes toward the death penalty. A discussion of legislative changes and purposes for the death penalty does not result in information about the qualifications of prospective jurors. Hence, we do not find that the trial judge abused his discretion in restricting questions in this area.
Assignment of Error No. 5 is without merit.

ASSIGNMENTS OF ERROR NOS. 7 AND 8
Defendant contends the trial judge erred in denying his motion to quash the jury panel and/or motion for a mistrial on the ground that the jury did not represent a fair cross-section of the community. He argues that the state systematically excluded blacks from the jury through the exercise of its peremptory challenges (Assignment of Error No. 7). Defendant also contends the trial judge erred in not holding an evidentiary hearing on the issue (Assignment of Error No. 8).
This court has consistently reiterated its adoption of the views expressed in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), wherein the United States Supreme Court held that an accused is not denied equal protection when the state, through the use of peremptory challenges, prevents blacks from serving on the jury unless he can prove systematic exclusion over a period of time. Where a defendant is able to establish a prima facie case of such systematic exclusion, the burden shifts to the state to show that no discrimination was practiced. Defendant must not be denied the opportunity to make his prima facie showing. State v. Bias, 354 So.2d 1330 (La.1978).
In the instant case, after the jury was selected and sworn, but prior to the reading of the indictment, defendant moved to quash the jury panel and/or for a mistrial because of the systematic exclusion of blacks from the jury "that is now seated." It is obvious from reading the transcript that defense counsel was not prepared to show a systematic exclusion of blacks through the use of peremptory challenges by the state over a period of time. In oral argument before this court, defense counsel conceded that at the time of his motion (as well as now) he had no evidence whatsoever to support his allegation of systematic exclusion of blacks from juries over a period of time. Accordingly, we are unable to say that the trial judge erred in denying defendant's motion to quash and/or for a mistrial and in failing to hold an evidentiary hearing on the issue.
Assignments of Error Nos. 7 and 8 are without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends the trial judge erred in denying his motion to suppress his confession made by him to law enforcement officers and in admitting it in evidence. He argues that it was not freely and voluntarily made after being advised of his Miranda rights and that it was taken in violation of his right to counsel.
*145 At the suppression hearing held outside the presence of the jury during trial, Deputies Donnie Fitz and Alfred Allemond testified that they arrested defendant on November 21, 1980 in Houston, Texas. Defendant was advised of his Miranda rights at that time. He was again advised of his rights when he appeared before a Texas court later that day for extradition proceedings. Defendant waived formal extradition and was returned to Louisiana. On November 24, 1980, defendant appeared in court for appointment of counsel pursuant to La. Code Crim.P. art. 230.1. He was again advised of his Miranda rights. Immediately thereafter, defendant was taken to Deputy Fitz's office and asked whether he wanted to make a statement. Defendant indicated that he did and signed a written waiver of rights form. Defendant was then taken to Deputy Connie Buster's office where he made a confession. Deputy Buster took notes as defendant talked. After defendant had completed his confession and while his statement was being typed, his court-appointed attorney arrived and informed the officers that the interrogation was to cease. The attorney also advised defendant not to sign the statement.
All of the deputies involved testified that defendant appeared to fully understand his rights and was not promised anything or threatened in any way. Defendant acknowledged that he knew an attorney had been appointed to represent him and that he did not request the opportunity to speak with that attorney. On the other hand, defendant claimed that he felt pressured to make a statement because he knew that Barbara Briscoe (his girlfriend) and Juanita Boyce (Coleman's girlfriend) had "made deals" with the police. He further claimed that he was told that if he cooperated, he would not get the death penalty. At the conclusion of the hearing, the trial judge, finding that defendant's statement was freely and voluntarily made after having been advised of his Miranda rights, denied the motion to suppress. Subsequently, the confession was admitted in evidence.
Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights and that he waived them. Miranda v. Arizona, 384 U.S. 436, 87 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless they are not supported by the evidence. State v. Gaskin, 412 So.2d 1007 (La.1982). When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement. La. Code Crim.P. art. 703(G).
After a review of the record, we are convinced, as was the trial judge, that the state satisfied its burden of affirmatively proving that the confession was freely and voluntarily made after defendant had been advised of his Miranda rights. Each of defendant's contentions was in direct conflict with the testimony of the deputies. Moreover, in view of defendant's express waiver of the presence of counsel immediately after the appointment thereof and his admissions that he knew that counsel had been appointed to represent him and that he made no request to speak with the attorney, we are unable to say that his confession was taken in violation of his right to counsel. Hence, the trial judge did not err in denying defendant's motion to suppress the confession and in admitting it in evidence.
Assignment of Error No. 9 is without merit.

*146 ASSIGNMENTS OF ERROR NOS. 11 AND 12
Defendant contends the trial judge erred in denying his motions for mistrial grounded on the claims that certain comments by a state witness and a deputy sheriff were prejudicial.
Juanita Boyce, an eyewitness to the shooting, was called by the state to testify at trial. On cross-examination, she was asked by defendant why she did not report the crime to the police sooner than she did. She replied:
I was afraid to report the murder because the way that I saw Mr. Perry shoot Mr. Carr, Mr. Perry hadn't know me ... Mr. Perry had not know me much longer than he saw Mr. Carr, so I didn't feel it would be very hard for him to shoot me either. So, I was actually afraid, and later on I was told that it was Perry's plan to kill both Mr. Coleman and myself.
Defendant objected. The trial judge admonished the jury to disregard the last part of her reply. Later, defendant's motion for a mistrial was denied.
During direct examination, Deputy Fitz testified that he, together with other police officers, arrested defendant in Houston, Texas. At the time, Barbara Briscoe (defendant's girlfriend) was with them. Ms. Briscoe spotted the car in which defendant was driving. When asked what they (police officers) did at that time, the witness answered:
Once we spotted the Cadillac, we recognized the Louisiana plates on the car, they were G plates. We had knowledge, before we left Louisiana, that the plates were stolen.
Defendant objected. Outside the presence of the jury, defendant moved for a mistrial. The trial judge denied the motion and admonished the jury to disregard any reference to stolen license plates.
A direct or indirect reference to another crime committed or alleged to have been committed by defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney or a court official, during trial or in argument, would require a mistrial on motion of defendant. La. Code Crim.P. art. 770(2). However, neither a state witness nor a deputy sheriff is a "court official"; therefore, art. 770 does not apply. Rather, art. 771 of the Code of Criminal Procedure would be the applicable article. State v. Manuel, 408 So.2d 1235 (La.1982); State v. Hutto, 349 So.2d 318 (La.1977); State v. Hardy, 344 So.2d 1018 (La.1977); State v. Jones, 332 So.2d 466 (La.1976).
La.Code Crim.P. art. 771 provides in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
. . . .
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Clearly, Ms. Boyce's answer was responsive to the question asked; however, perhaps her explanation of why she did not report the crime sooner to the police went beyond that anticipated by defense counsel. Moreover, the jury knew of Ms. Boyce's involvement in the crime and that she had been granted immunity. Thus, the jury was able to give proper weight to her testimony. Also, there was no evidence of bad faith on the part of the state. Under the circumstances, we consider that any prejudice resulting from the witness' response was cured by the trial judge's admonition to the jury.
*147 Deputy Fitz's remark regarding the stolen plates on the car in which defendant was driving at the time of his arrest was unsolicited and unresponsive to the prosecutor's question. Unsolicited and unresponsive testimony is not chargeable against the state to provide a ground for the reversal of a conviction. State v. Hutto, supra. Moreover, there is no showing that the remark was deliberately obtained by design of the prosecutor to prejudice the rights of defendant. State v. Hardy, supra. Also, Barbara Briscoe (defendant's girlfriend), in describing the events between the murder and defendant's arrest, had previously stated without objection that he (defendant) "stole a car" and took her to Dallas. Hence, we consider that any prejudice resulting from Deputy Fitz's remark was cured by the trial judge's admonition to the jury.
In sum, the trial judge did not err in denying defendant's motions for mistrial. Assignments of Error Nos. 11 and 12 are without merit.

ASSIGNMENT OF ERROR NO. 13
Defendant contends the trial judge erred in denying his motion for a mistrial based on the state's failure to comply with his request for discovery.
Prior to trial, defendant filed a motion for discovery seeking, inter alia, to be informed of any oral or written inculpatory statements made by him and intended for use at trial. The state's answer included the notes of defendant's confession taken by Deputy Connie Buster on November 24, 1980.[3] At trial, in laying the predicate for introduction of defendant's confession in evidence, Deputy Fitz testified that on November 24, 1980, he and Deputy Allemond brought defendant to his (Fitz's) office where defendant was advised of his rights and signed a written waiver form. Defendant agreed to make a statement about his involvement in the crime. Defendant was then taken to an adjoining office where he gave a detailed confession to Deputy Buster who took notes thereof.
Outside the presence of the jury, defendant argued that he was prejudiced by the state's failure to inform him of its intent to introduce in evidence his oral inculpatory statement to Deputy Fitz. The trial judge denied defendant's motion for a mistrial.
La.Code Crim.P. art. 716(C) provides:
Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer.
La.Code Crim.P. art. 729.5(A) provides:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
The state only sought to introduce in evidence the confession given to Deputy Buster. Deputy Fitz's testimony was necessary in laying the predicate for the introduction of defendant's confession in evidence. La.R.S. 15:451;[4] La. Code Crim.P. art. 703(G).[5] Deputy Fitz did not testify as *148 to what defendant told him about the crime; he only stated what happened immediately prior to defendant's confession. In our view, only one confession was presented to the jury. The confession began with defendant agreeing to talk about his involvement in the crime and ended with his statement to Deputy Buster who took notes as he related the details to her. In any event, defendant was not prejudiced by the state's failure to inform him of the substance of his statement to Deputy Fitz. Hence, we do not consider that the trial judge abused his discretion in denying defendant's motion for a mistrial.
Assignment of Error No. 13 is without merit.

ASSIGNMENT OF ERROR NO. 14
Defendant contends the trial judge erred in restricting his cross-examination of Juanita Boyce.
Juanita Boyce testified that she and Barbara Briscoe watched defendant and Coleman plan the robbery. She stated that it was defendant who insisted on robbing Carr and that he was the one who shot Carr. On cross-examination, defendant asked Ms. Boyce whether she had testified at the trial of Coleman which was being conducted at the same time in another courtroom. She replied in the affirmative. The witness was then asked: "Do you know who called you to the stand in the other courtroom?" The state objected on the ground of relevancy. Defendant argued that the purpose of the question was to show Ms. Boyce's bias against him because of her relationship with Coleman. The trial judge sustained the objection.
La.R.S. 15:492 provides:
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.
A defendant in a criminal case may attack the credibility of a witness by cross-examination directed at possible bias or interest which might influence the witness' perspective or color his testimony. State v. DeCuir, 364 So.2d 946 (La.1978).
Prior to the question at issue, Ms. Boyce had testified that she and Coleman were intimate friends. She had admitted that they were "lovers." Hence, her relationship with Coleman had been fully explored before the jury. Additionally, she had admitted her presence at the scene of the crime and the fact that she had been granted immunity from prosecution. Therefore, the jury was well aware of the reasons she might have for testifying against defendant. In addition, Barbara Briscoe's (defendant's girlfriend's) testimony fully corroborated that of Ms. Boyce. Under the circumstances, any error by the trial judge in sustaining the state's objection to the question was harmless.
Assignment of Error No. 14 is without merit.

ASSIGNMENT OF ERROR NO. 16
Defendant contends the trial judge erred in failing to inform the jury of the consequences, that is, that defendant would be sentenced to life imprisonment if it failed to make a unanimous sentencing recommendation.
A similar argument was made in State v. Myles, 389 So.2d 12 (La.1980), (on rehearing, sentence vacated on other grounds). We stated in Myles that
defense argument is based on an apparent confusion concerning the jury's role in the sentencing phase of the trial. Under the scheme provided in the Code of Criminal Procedure, the jury must unanimously agree on any sentence recommendation. *149 C.Cr.P. 905.7. However, the jurors are not required to make a recommendation, and if they fail to reach an agreement, a sentence of life imprisonment will be imposed. C.Cr.P. 905.8.
The instruction explaining this to the jury in this case is identical to that in the Myles case:
Before you decide that a sentence of death should be imposed you must unanimously find beyond a reasonable doubt that at least one statutory aggravating circumstance exists.
If you find beyond a reasonable doubt that any of the statutory aggravating circumstances existed you are authorized to consider imposing a sentence of death. If you do not unanimously find beyond a reasonable doubt that any of the statutory aggravating circumstances existed, then life imprisonment without benefit of probation, parole or suspension of sentence is the only sentence that may be imposed.
In disposing of defendant's argument in Myles, we stated:
The jurors were informed of only two possible recommendations and were instructed that any response other than a unanimous recommendation of death, coupled with a supported finding of an aggravating circumstance, would result in a sentence of life imprisonment. From this charge a reasonable juror could infer that failure to reach a unanimous sentence recommendation would result in life imprisonment.
Moreover, unlike the situation in State v. Williams, 392 So.2d 619 (La.1980) (on rehearing), the jury never requested during its deliberation an instruction on the necessity of a unanimous verdict or the consequences of a non-unanimous verdict. See State v. Mattheson, 407 So.2d 1150 (La.) (footnote 12).
Assignment of Error No. 16 is without merit.

ASSIGNMENT OF ERROR NO. 17
Defendant contends the trial judge erred in denying his "Motion for Directive Sentencing or in Arrest of Judgment" filed prior to the imposition of sentence by the court in accordance with the recommendation of the jury. Basically, he argues that the finding by the jury of one of the enumerated circumstances (armed robbery) in the guilt phase had the effect of shifting the burden to him to prove mitigating circumstances to avoid the death penalty.
A similar argument was made in State v. Clark, 387 So.2d 1124 (La.) cert. denied, 449 U.S. 1103, 101 S.Ct. 900, 66 L.Ed.2d 830 (1980). In finding it without merit, we stated:
Notwithstanding the verdict rendered in the guilt portion of the trial, to determine that the sentence of death be imposed the jury must find beyond a reasonable doubt that at least one statutory aggravating circumstance exists after a sentencing hearing. Defendant has the opportunity to introduce evidence, including that of mitigating circumstances, not introduced at trial. The jury is not bound to find the existence of an aggravating circumstance merely because it found defendant guilty of first degree murder.
Hence, we do not consider that under the statutory scheme the burden is shifted to defendant to prove mitigating circumstances in order to avoid the death penalty. The trial judge did not err in denying defendant's motion.
Assignment of Error No. 17 is without merit.

OTHER ASSIGNMENTS OF ERROR
Defendant neither briefed nor argued Assignments of Error Nos. 1, 2, 6, 10, 15 and 18. Hence, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975). In any event, they are without merit.
In Assignment of Error No. 1, defendant contends the trial judge erred in *150 excluding women with young children from the jury venire. La.Code Crim.P. art. 783(B) provides that the district court may excuse a person from jury service if such service would result in undue hardship or extreme inconvenience. Moreover, we have previously held that excusing a prospective juror with young children is not an abuse of discretion. State v. Gomez, 319 So.2d 424 (La.1975). Further, to support a challenge to the composition of a jury venire, the defendant must demonstrate that the state has not complied with the statutory procedures for the selection of the venire or that there has been systematic discrimination affecting a class of persons in the selection of the jury panel. State v. Drew, 360 So.2d 500 (La.), appeal dismissed, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1978). No such showing has been made here. Hence, Assignment of Error No. 1 is without merit.
In Assignment of Error No. 2, defendant contends the trial judge erred in failing to properly purge the central jury pool box from which the instant jury panel was drawn. On the morning of trial, the members of the general jury venire were examined as to their qualifications to serve. Morris Prater was excused in accordance with La.Code Crim.P. art. 401 because he was unable to read. However, his name was inadvertently placed in the central jury pool box with 124 other names. The error was subsequently corrected. Defendant objected on the ground that, if Prater's name had been left out, another name would have been called. Any variation from the strict letter of the law does not permit the composition of a petit jury to be set aside because of insignificant technicalities or irregularities unless there is a showing that some fraud has been practiced or great wrong committed which would work irreparable injury to the accused. La.Code Crim.P. art. 419; State v. Monk, 315 So.2d 727 (La.1975). Clearly, no such showing has been made here. Hence, Assignment of Error No. 2 is without merit.
In Assignment of Error No. 6, defendant contends the trial judge erred in denying his request for three additional peremptory challenges. La.Code Crim.P. art. 799 provides that in trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges. It was not error for the trial judge to refuse to grant defendant additional peremptory challenges. State v. Normand, 298 So.2d 823 (La.), cert. denied, 420 U.S. 908, 95 S.Ct. 827, 42 L.Ed.2d 838 (1974); State v. Snedecor, 294 So.2d 207 (La.1974). Hence, Assignment of Error No. 6 is without merit.
In Assignment of Error No. 10, defendant contends the trial judge erred in admitting in evidence three photographs of the deceased victim. It is well established that the test of admissibility of allegedly gruesome photographs is whether their probative value outweighs the possible prejudice that may result from their display to the jury. Photographs of the body of a deceased victim have generally been held relevant to prove the corpus delicti; to corroborate other evidence of the manner in which death occurred; to establish the location, severity and number of wounds; and to establish the identity of the victim. State v. Gaskin, 412 So.2d 1007 (La.1982); State v. Lewis, 353 So.2d 703 (La.1977). After examining the photographs in question, we do not consider that they are gruesome. Moreover, they were relevant to prove the identity of the murder victim and to corroborate the testimony concerning the manner in which the victim was killed. Accordingly, the probative value of the photographs outweighs any possible prejudicial effect. Assignment of Error No. 10 is without merit.
In Assignment of Error No. 15, defendant contends the trial judge erred in allowing the jury to reexamine the photographs of the deceased victim during the state's closing argument. We have previously held that reexamination of evidence by the jury during closing argument does not constitute error. State v. Rowell, 306 So.2d 671 (La.1975); State v. Atkins, 360 So.2d 1341 (La.), cert. denied, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1978). Hence, Assignment of Error No. 15 is without merit.
*151 In Assignment of Error No. 18, defendant seeks review of his sentence on the ground that it was excessive. La.Code Crim.P. art. 905.9 provides that this court shall review every sentence of death to determine if it is excessive. In compliance therewith, we have reviewed defendant's sentence of death for excessiveness. See "Sentence Review" hereinafter.

SENTENCE REVIEW
Article 1, section 20 of the Louisiana Constitution prohibits cruel, excessive, or unusual punishment. La.Code Crim.P. art. 905.9 provides that this court shall review every sentence of death to determine if it is excessive. The criteria for review are established in La.Sup.Ct.R. 28, § 1, which provides:
Review Guidelines. Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

(a) Passion, prejudice or any other arbitrary factors
There is no evidence that defendant's sentence was imposed under the influence of passion, prejudice or any other arbitrary factors. Although defendant is black and the victim and jury were white, there is no evidence that the prosecutor made any appeal to racial prejudice in order to influence the jury in making its recommendation that the death penalty be imposed. Therefore, we cannot say that the jury's decision was made arbitrarily because of racial prejudice.
The testimony and presence in the courtroom of the victim's widow cannot be said to be an arbitrary factor influencing the jury's decision. Although the presence of Mrs. Carr may have had an effect on the jury, her testimony was relevant to the issues and there is no evidence that her appearance as a witness during the guilt phase of the trial caused the jury to act unreasonably or capriciously.

(b) Statutory aggravating circumstances
The jury in its verdict found the following statutory aggravating circumstance:
(1) The offender was engaged in the perpetration of an armed robbery.
Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. In our view, the evidence amply supports the jury's finding that defendant was engaged in the perpetration of an armed robbery.

(c) Proportionality to the penalty imposed in similar cases
Supreme Court Rule 28, § 4 provides that the district attorney shall file with this court a list of each first degree murder case in the district in which sentence was imposed after January 1, 1976. The list shall include the docket number, caption, crime convicted, sentence actually imposed and a synopsis of the facts in the record concerning the crime and the defendant. In the instant case, the list reveals that there have been eleven first degree murder prosecutions in the Fourteenth Judicial District Court for the Parish of Calcasieu. Six resulted in verdicts of first degree murder.[6] Of these six, only three, including Joe Lewis Perry, were sentenced to death in accordance with the recommendation of the jury.[7] Only two of these six *152 cases, including the instant case, involved the statutory aggravating circumstance of armed robbery. However, in the other case, State v. Bryan Jerome Shank, Docket No. 7438-81, Fourteenth Judicial District Court, the youthfulness of Shank, age 19, and his history of mental illness might well have been factors considered by the jury in recommending that he be sentenced to life imprisonment rather than to death. Because of defendant's age (34) and his criminal record as hereinafter set forth, we do not consider the penalty imposed was disproportionate to similar cases.
According to the Uniform Capital Sentence Report and the Sentence Investigation Report, defendant is a 34-year-old black male. He only completed the eighth grade in school. Defendant has a significant juvenile record including charges of theft and burglary. Ultimately, he was discharged from custody on April 1, 1965, after reaching the age of 17. His adult criminal record began in May of 1965 and includes convictions on two counts of forgery, three convictions of unauthorized use of a movable, one conviction of interstate transportation of a stolen motor vehicle, one conviction of receiving stolen things and one conviction of theft. Defendant is the product of a broken home and was raised by his maternal grandparents until he was 15 years old. Defendant has never been married. No psychiatric evaluation was performed in this case though in the past the defendant has been determined to have subnormal intelligence.
After having considered the above factors, we are unable to conclude that the sentence imposed in the instant case is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Hence, based on the above criteria, we do not consider that defendant's sentence of death constitutes cruel, excessive or unusual punishment.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
In this case a black man has been sentenced to death on the basis of findings by a jury from which all members of his race were excluded by actions of the state. The record establishes a clear prima facie case that the prosecutor excluded every potential black juror by use of peremptory challenges in order to enhance the chances of the defendant's conviction and death sentence. In upholding the trial court's actions, I believe my brethren have overlooked serious state and federal constitutional errors.
Once again a majority of this court refuses to offer any explanation of how such blatant racial discrimination by a state government official can be tolerated in the face of our state constitution's absolute prohibition against state discrimination against a person because of race. La.Const. 1974, art. I, § 3.
Even in a capital case, the majority assumes that Swain v. Alabama is to be automatically and mechanistically applied to require a defendant to prove systematic racial discrimination in past cases as well as his own. The majority ignores, however, the capital punishment principles which have evolved since Swain was decided in 1965. The United States Supreme Court in abrogating prior death penalty schemes, and in approving modern capital punishment procedures, has sought to overcome the risk that the death penalty will be administered in a discriminatory fashion by requiring channelization of the sentencing authority's discretion. See Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 *153 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). After Swain, the high court on at least two occasions severely limited the extent to which the state may challenge jurors in capital cases. Recognizing that a fair cross section of the community is especially important in the jury composition in a capital case, the Court in 1968 ruled that the state may not exclude potential jurors merely because they voice a general opposition to the death penalty. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Recently, the Court extended this reasoning to prohibit a state from excluding jurors simply because they cannot swear that the possibility of the death penalty would not "affect" their deliberation on any issue of fact. Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).
These decisions signal that a defendant's right to the selection of a fair and impartial jury must be scrupulously respected in a capital case, and that a state supreme court must take its review responsibilities seriously when presented with a colorable claim that racial discrimination has affected the imposition of a death penalty. Because of the generally more stringent protections surrounding a state's administration of the death penalty, and the greater care which must be exercised in selecting a capital jury in particular, I believe that Swain v. Alabama is an anachronism in the modern capital punishment era. Consequently, I do not think this court is free to lightly disregard under the Swain aegis the racially discriminatory manner in which the jury that recommended the death penalty for this black defendant was chosen.
The high court has not yet approved the application of Swain to a modern capital case. I do not believe it can do so without permitting re-introduction of the potential for discriminatory and capricious imposition of the death penalty its recent capital punishment decisions have sought to prevent.
For these reasons, I believe this court's continued insensitivity to the injustice of racially inspired peremptory challenges is grievous error that should not be sanctioned in a death penalty prosecution.
I respectfully dissent.
CALOGERO, Justice, dissenting.
I agree with the views expressed by Justice Dennis in dissent. Swain v. Alabama may, as the majority of this Court has consistently found, be determinative, in non-capital convictions, on the issue of peremptory exclusion from the petit jury because of race. Swain should not be deemed controlling, however, as relates to this death penalty conviction. The potentially dangerous effect of the state's use of peremptory challenges to cause selection of an all white jury to try this black defendant, charged with killing a white man, is made evident through hindsight.
The jury recommended death in this case. In eleven other first degree murder prosecutions in Calcasieu Parish the death penalty was recommended in only two cases, neither of which involved a killing during the perpetration of an armed robbery, but more heinous offenses. There have been in this Parish three other first degree murder prosecutions for a killing which occurred during the perpetration of an armed robbery. Two of those defendants pled guilty to second degree murder and the third, upon recommendation of the jury, was sentenced to life imprisonment.
NOTES
[1] Dwayne Smith Coleman was separately charged and tried for his involvement in this crime.
[2] Our review of the record reveals that only four prospective jurors were excused for cause due to their sentiments regarding the death penalty.
[3] Defendant was also notified that the state intended to offer in evidence certain oral inculpatory statements made by him on November 10-11, 1980, in the presence of Juanita Boyce, Barbara Briscoe and Dwayne Coleman.
[4] La.R.S. 15:451 provides:

Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.
[5] La.Code Crim.P. art. 703(G) provides:

When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
[6] Two defendants pled guilty to second degree murder; one pled guilty to manslaughter; one was found guilty of manslaughter; and one was found not guilty by reason of insanity.
[7] In State v. Sylvester, 400 So.2d 640 (La. 1981), this court reversed the conviction and sentence and remanded for a new trial. On remand, defendant withdrew his former plea of not guilty and pursuant to a plea bargain entered pleas of guilty to two counts of manslaughter and aggravated criminal damage to property. In State v. English, 367 So.2d 815 (La. 1979), this court affirmed the conviction but reversed the sentence and ordered that defendant be resentenced to life imprisonment.